EVA COLLINS, Special Adm'r of Laura Collins' Estate, Plaintiff-Appellant, v. SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC., Defendant-Appellee (Alden Wentworth Rehabilitation and Health Care Center, Inc., Defendant).

First District (2nd Division)    No. 1—01—4386

Opinion filed April 29, 2003.

Philip F. Maher, Stephen E. McLean, Paul Russell Fine, and Janice Schaffrick, all of Philip F. Maher & Associates, of Chicago, for appellant.

Williams, Montgomery & John, Ltd., of Chicago (Christina D. Ketcham, Alyssa M. Campbell, Jeffrey H. Lipe, and Lloyd E. Williams, Jr., of counsel), for appellee.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

This appeal arises from the trial court's dismissal of count II of the first amended complaint (the complaint), which was filed by plaintiff-appellant, Eva Collins, special administrator of Laura Collins'

estate,[1] against defendant-appellee, Superior Air-Ground Ambulance Service, Inc. (Superior), under section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000). Count I of the complaint alleged statutory nursing home violations against defendant Alden Wentworth Rehabilitation and Health Care Center, Inc. (Alden), as a result of injuries sustained by plaintiff's decedent while in Alden's care. Count II of the complaint alleged negligence under the doctrine of *res ipsa loquitur* against both defendants. Specifically, plaintiff alleged that her mother's injuries occurred during the period of time when she was under Superior "and/or" Alden's control and that these injuries "would not have occurred if defendants had used a reasonable standard of care while Collins was under defendant(s)['] control and management." Further, plaintiff alleged that as a direct and proximate result of defendants' negligence, Collins suffered severe and permanent disabling injuries to her body, pain and suffering, and mental anguish. The defendants moved to dismiss count II of the complaint on the ground that it failed to state a cause of action for *res ipsa loquitur*. Superior also claimed that plaintiff's claim against it was barred based on the immunity provision set forth in the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/3.150 (West 2000)). On September 17, 2001, the trial court granted Superior and Alden's motion to dismiss count II on the ground that the complaint failed to state a cause of action under the doctrine of *res ipsa loquitur*. In its order, the trial court found that because the defendants were in control of different instrumentalities at different times, *res ipsa loquitur* could not apply. The trial court never reached Superior's immunity argument. The trial court's finding pursuant to Supreme Court Rule 304(a) making the dismissal order final and appealable was made only to Superior. 155 Ill. 2d R. 304(a). Alden remains a defendant in the trial court and is not a party to this appeal.

We first consider whether a plaintiff's complaint is factually sufficient under the doctrine of *res ipsa loquitur* where each defendant that allegedly caused her injuries has been named in that complaint but did not jointly control the instrumentality that caused the injuries.

Laura Collins (Collins) was born May 8, 1916. In June of 1999, she was 83 years old and lived with plaintiff, her daughter Eva Collins, at 5113 South Marshfield Avenue, Chicago, Illinois. At the time, Collins was bedridden, her left leg had been amputated due to diabetes, and she was unable to speak as a result of a stroke. According to the record, she was fed through a "G-tube."

---

[1]Laura Collins was the original plaintiff in this action. On December 14, 2001, Laura Collins died. On July 3, 2002, Eva Collins, special administrator of Laura Collins' estate, was substituted as plaintiff-appellant.

On June 7, 1999, plaintiff admitted her mother to Alden, located at 201 West 69th Street, Chicago, Illinois. On the same day, Collins was transported to Alden by Superior. Plaintiff then went to Minnesota and returned to Chicago on June 12, 1999. Collins was returned home by Superior on June 12, 1999.

Upon her mother's return, plaintiff noticed that Collins was in pain when her right leg was moved. She also observed that her mother was dehydrated. Plaintiff denied that her mother was injured before her admission to Alden and transport thereto.

After noticing her mother's condition, plaintiff called the Chicago fire department and paramedics transported Collins to Holy Cross Hospital. At the hospital, Collins was diagnosed with a fractured right distal tibia and fibula, commonly known as a broken right leg, and dehydration.

Attached to plaintiff's complaint was a supplemental physician's report filed pursuant to section 2—622 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—622 (West 2000). In the report, the reviewing physician opined that the dehydration and fracture to Collins' right leg would not have occurred in the absence of negligence. He further found that, during the period of June 7, 1999, to June 12, 1999, Collins was under the control of Superior and Alden and that Superior and Alden controlled any agency or instrumentation which caused Collins' dehydration and fractured right leg. According to the physician, in the normal course of events, the injuries to Collins would not have occurred if the defendants had used a reasonable standard of care while Collins was under the defendants' control and management. The physician further found that either Superior and/or Alden negligently moved or handled Collins and caused injury to her right leg, failed to diagnose the injury to her right leg, and thereafter failed to properly treat her injury by referring her to a properly qualified physician.

As noted above, Superior and Alden filed motions to dismiss count II of plaintiff's complaint under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), and, in an order dated September 17, 2001, the trial court granted both Superior and Alden's motions to dismiss on the basis that *res ipsa loquitur* was inapplicable because the element of concurrent control with regard to both defendants could not be established. Plaintiff appeals from that order.

■ Our standard of review on reviewing a motion to dismiss under section 2—615 is *de novo. Neade v. Portes*, 193 Ill. 2d 433, 439, 739 N.E.2d 496 (2000).

■ We begin our discussion with a statement concerning the

doctrine of *res ipsa loquitur* and its purpose. Our supreme court said in *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-49, 207 N.E.2d 305 (1965):

> "When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citations.] This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant."

The appellate court also observed the following:

> "Because Illinois requires fact pleading [citation], *res ipsa loquitur* is often pleaded as a separate claim [citation] and, therefore, has sometimes been referred to as a cause of action [citation]. Nevertheless, *res ipsa loquitur* is 'simply a rule of evidence relating to the sufficiency of plaintiff's proof.' [Citation.]" *Darrough v. Glendale Heights Community Hospital*, 234 Ill. App. 3d 1055, 1060, 600 N.E.2d 1248 (1992).

In *Gatlin v. Ruder*, 137 Ill. 2d 284, 295, 560 N.E.2d 586 (1990)), the supreme court, quoting *Spidle v. Steward*, 79 Ill. 2d 1, 5-6, 402 N.E.2d 216 (1980), stated:

> " 'The *res ipsa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured "(1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control ***." [Citations.]' "

The supreme court has also stated, "[w]hen *res ipsa loquitur* is invoked the plaintiff bears the burden of proving all of its elements." *Dyback v. Weber*, 114 Ill. 2d 232, 242, 500 N.E.2d 8 (1986).

In the instant case, plaintiff claims that the trial court erred in dismissing count II when it held that *res ipsa loquitur* was not applicable to the instant suit. Plaintiff claims that the facts set forth in the complaint and accompanying physician's report were sufficient to satisfy the requisite pleading elements for the inference of negligence which arises under the doctrine of *res ipsa loquitur*. *Gatlin*, 137 Ill. 2d at 295.

Superior responds that where the occurrence speaks, not of Superior's negligence, but of negligence imputable to someone else, *res ipsa loquitur* is not applicable. According to Superior, plaintiff's conclusions in count II that Collins' injuries occurred at some point between

the time she left home on June 7, 1999, and the time she returned home on June 12, 1999, do not speak to Superior's negligence. During the time at issue, Superior suggests that Collins was treated by two different entities, Superior and Alden. For most of the six days complained of, Superior had no contact with Collins. Thus, Superior claims that the alleged injuring instrumentality could have been controlled by Superior, Alden, or a third party. Because it could not be inferred that Collins was injured during her transport by Superior or by an instrumentality controlled by Superior, Superior contends that count II did not support an inference of res ipsa loquitur negligence against it.

■ When reviewing a section 2—615 motion to dismiss, we take as true all well-pled facts and reasonable inferences therefrom and consider only those facts in the pleading and included in the attached exhibits. *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218, 777 N.E.2d 693 (2002). Further, when an exhibit is attached to a complaint it becomes part of the complaint. *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 921, 770 N.E.2d 684 (2002). As a result, the facts alleged in the physician's affidavit attached to the complaint pursuant to section 2—622 of the Illinois Code of Civil Procedure are part of the complaint. 735 ILCS 5/2—622 (West 2000). In the supplemental physician's report filed pursuant to section 2—622, the reviewing physician, among other things, stated: "[I]t is my opinion, to a reasonable degree of medical certainty, that either [Superior] and/or [Alden], negligently moved or handled Laura Collins and thereby caused injury to her right distal tibia and fibula, failed to diagnose the injury to her right distal tibia and fibula, and thereafter failed to properly treat her injury by referring her to a properly qualified physician."

In *Gatlin v. Ruder*, cited above, the plaintiff-mother filed a negligence action on behalf of her infant child against two defendants, Bernard Ruder, an obstetrician, and Riverside Medical Center (Riverside), in connection with injuries sustained by the child during or immediately after his birth. The facts revealed that Ruder was directly involved in delivering the child. After the delivery, the child was immediately admitted to the nursery at Riverside. Three hours after delivery, a notation was made on the child's medical chart that he had several large scratches and a bruise on the top of his head. Several days later, an X ray revealed a fracture in the infant's skull. The child's cerebral palsy was, according to one doctor, a result of the skull fracture.

The plaintiff later amended her complaint to include a count based upon *res ipsa loquitur*. Ruder filed a motion for summary judgment

contending that there was no evidence that he acted negligently. The trial court agreed with Ruder and granted Ruder's motion for summary judgment on that ground.

During subsequent discovery, a medical school professor was deposed. Based on the professor's testimony, the plaintiff filed a motion to vacate the summary judgment motion, which was denied. The appellate court affirmed the trial court's ruling on the motion to vacate and the plaintiff appealed.

■ On review, the supreme court reversed. The court held that the plaintiff need only present evidence on each of the *res ipsa loquitur* requirements to create an issue of material fact, and having done so, the plaintiff's motion to vacate Ruder's motion for summary judgment should have been granted. *Gatlin*, 137 Ill. 2d at 300. Regarding the first element, the court noted that the plaintiff's evidence established that the plaintiff's injuries would not have occurred absent negligence. *Gatlin*, 137 Ill. 2d at 296-97. Concerning the second element, the court stated:

> "The second element—defendant's exclusive control over the instrumentality which caused the injury—is more problematic because two defendants are involved. The appellate court held: '[The plaintiff] failed to establish that it is more probable that Dr. Ruder caused his injuries, and not the hospital personnel.' This statement, however, does not correctly state [the plaintiff's] burden of proof on a motion for summary judgment. [The plaintiff] only had to present enough evidence to raise an issue of fact as to whether Ruder had control over the instrumentality which caused [the plaintiff's] injuries." *Gatlin*, 137 Ill. 2d at 297.

The plaintiff argued and the court agreed that the plaintiff suffered his injuries at the hand of either Ruder during the delivery or Riverside's employees in the nursery immediately after the delivery. By presenting evidence on each of the *res ipsa loquitur* requirements, the court determined that the plaintiff had presented sufficient circumstantial evidence from which a jury could infer negligence. *Gatlin*, 137 Ill. 2d at 300. Thus, *Gatlin* supports a negligence claim under the doctrine of *res ipsa loquitur* where a plaintiff presents some evidence that the injuries could have occurred at the hands of a doctor delivering a baby *or* at the hands of hospital personnel while the baby was being cared for in the nursery.

■ In the instant case we are evaluating whether count II of plaintiff's complaint states a cause of action, not whether sufficient evidence was presented to avoid summary judgment.

As we noted above, the supplemental report of the reviewing physician stated: "[I]t is my opinion, to a reasonable degree of medical

certainty, that either [Superior] and/or [Alden], negligently moved or handled Laura Collins and thereby caused injury ***." In *Gatlin*, the court noted that satisfying the second prong—defendant's exclusive control over the instrumentality—was problematic because there were two defendants. Nonetheless, the court found that the plaintiff had presented enough evidence to raise an issue of fact as to whether Ruder or Riverside had control over the instrumentality causing the injury. *Gatlin*, 137 Ill. 2d at 297. Based on the reasoning in *Gatlin*, we find that plaintiff has sufficiently alleged Superior and/or Alden negligently moved or handled Laura Collins, thereby causing injury, and the inference of negligence under *res ipsa loquitur* can arise from these pleaded facts. Additionally, we find other authority to support our conclusion.

In *Barkei v. Delnor Hospital*, 176 Ill. App. 3d 681, 688, 531 N.E.2d 413 (1988), the defendant Delnor Hospital (Delnor) appealed from a jury verdict entered in favor of plaintiffs, Brittany Barkei, a minor, and her parents Kathleen and Randall Barkei, for injuries sustained by Barkei after her birth while being cared for in a hospital nursery. The plaintiffs initiated the action against both Delnor and Dr. John Lamiot, who performed the delivery of Brittany at Delnor. In 1987, the plaintiffs filed an amended complaint alleging that Brittany had sustained brain damage and a spinal cord injury as the result of the defendants' negligent conduct. In addition to a *res ipsa loquitur* count of negligence, Delnor was specifically charged with dropping Brittany, among other things. Lamiot reached a pretrial settlement and the case proceeded against Delnor.

At trial, Lamiot testified for plaintiffs. He stated that Brittany's birth had been normal for a breech birth, where the child's posterior as opposed to head appears first, and that he did not know of anything that occurred after Brittany was born to cause her to be injured.

Mary Lee Holland, the first pediatrician to examine Brittany, saw the baby approximately 12 hours after birth and found her to be free from abnormalities. The next day, however, Holland said that the baby had an irritable cry and held her head to the left side. Two days later, Holland found abnormal swelling to the infant's head and that the baby's left arm, which appeared normal before, was now limp. She assessed that a spinal cord injury was probable.

Dr. Murphy, Brittany's regular pediatrician, did not examine the baby until two days after she was born. He did not notice any swelling at the time but found the baby to be irritable. The next day, after observing some swelling between the baby's throat and spine, Murphy determined there might be a fracture of the baby's cervical spine.

Nurse Shulz assisted Dr. Lamiot during Brittany's delivery. She

said she had no knowledge of how Brittany might have received any trauma to her head and there was no notation of such an injury on Brittany's chart.

Brittany's parents testified that they did not know how the trauma to Brittany occurred. Randall Barkei, Brittany's father, said that he was present in the delivery room and that nothing unusual had happened during delivery.

After plaintiff presented the testimony of three expert witnesses, Delnor moved for a directed verdict, which was denied by the trial court. Delnor then offered testimony from several nurses who worked in Delnor's maternity wing at the time Brittany was in the hospital nursery. The case was submitted to the jury with instructions on specific negligence and *res ipsa loquitur* and the jury returned a general verdict in favor of plaintiffs.

Among other things, Delnor argued that plaintiffs failed to present sufficient evidence to prove the elements of negligence on the basis of *res ipsa loquitur*. Specifically, Delnor claimed that plaintiffs did not show that the hospital had exclusive control over the instrumentality which caused the trauma. The reviewing court found that the trial court correctly denied Delnor's motion for a directed verdict as to the negligence count based on *res ipsa loquitur*. *Barkei*, 176 Ill. App. 3d at 691. Further, the court noted that the child was injured near her birth and could not possibly have had knowledge or control of any of the possible causes of the trauma she suffered and could not eliminate them with any certainty, whereas the hospital's role in her injury was within its exclusive knowledge. *Barkei*, 176 Ill. App. 3d at 689.

The facts in the instant case are similar to those in *Barkei*. Here, Superior makes a claim like the one made by Delnor that plaintiffs did not show that Superior had exclusive control over the instrumentality that caused the injury. Further, like the infant child in *Barkei*, Collins, who was elderly, could not speak, and was immobile, did not have knowledge or control over the possible causes of the trauma she suffered and could not communicate them with any certainty, whereas Superior's involvement in the injury, or lack thereof, was within its exclusive knowledge. Certainly, it can be inferred from the facts as pled that the instrumentality of the injury was the handling of Collins by Superior and/or Alden. But for the alleged negligence of Superior and/or Alden, it can also be inferred that Collins would not have been injured. Count II of the complaint alleges that the injury occurred sometime between Collins' transport to Alden and her return home. These allegations indicate that Collins was in the exclusive control of Superior and/or Alden from the time she left her home until the time she was returned with her injuries. We reject Superior's suggestion

that Collins' injuries could have been inflicted by a third party. The complaint neither alleged the involvement of a third party, nor do the pleadings evidence such a claim. In our view, the allegations in count II of plaintiff's complaint are sufficiently pled to raise the inference of negligence under the doctrine of *res ipsa loquitur* against Superior.

In *Samansky v. Rush-Presbyterian-St. Luke's Medical Center*, 208 Ill. App. 3d 377, 567 N.E.2d 386 (1990), the plaintiff sought damages for injuries associated with the surgical removal of a catheter that remained in the plaintiff's body during heart surgery. The heart surgery, the removal of the catheter, and the postoperative care associated with these procedures were undertaken by defendant physicians, Dr. Javid and Dr. Goldin, with the assistance of employees of Rush-Presbyterian-St.Luke's Medical Center (Rush). The catheter at issue was manufactured by defendant Deseret Medical, Inc. (Deseret), and sold to defendant Rush. In his complaint, the plaintiff filed claims for *res ipsa loquitur* against defendant physicians, Rush, and Deseret. All of the defendants claimed that plaintiff could not invoke *res ipsa loquitur* because the plaintiff failed to show the defendants had joint, concurrent control over the instrumentality causing the plaintiff's injuries. The plaintiff's *res ipsa loquitur* claims were dismissed by the trial court with prejudice under section 2—619(a)(9) of the Illinois Code of Civil Procedure.

On review, the appellate court reversed, holding: "a plaintiff may benefit from *res ipsa loquitur* principles if the plaintiff can present evidence tending to show that the defendants exercised consecutive management or control over the instrumentality that caused plaintiff's injuries." (Emphasis omitted.) *Samansky*, 208 Ill. App. 3d at 386-87. The court, relying on the supreme court's decision in *Gatlin*, 137 Ill. 2d at 297-98, further found:

> "[P]laintiff need not present conclusive proof of which of the defendants exercised control over the [catheter] at the time that the condition causing plaintiff's injuries was created. Plaintiff is also not required to show that his injuries were more probably caused by one defendant than by another defendant. Nor must plaintiff eliminate all causes of his injuries other than the negligence of one or more of the defendants. [Citation.]" *Samansky*, 208 Ill. App. 3d at 388.

Based on the above, the court concluded that the trial court erred in dismissing plaintiff's *res ipsa loquitur* negligence claims. *Samansky*, 208 Ill. App. 3d at 388.

Here, Superior contends that *Samansky*'s reference to "consecutive control" was not supported by the language in *Gatlin* and that *Samansky* was an "aberrant decision." We disagree and determine

that the facts in the instant case are analogous to those in *Samansky*. As in *Samansky*, plaintiff alleged that defendants exercised consecutive management or control over Laura Collins at the time she was injured. While plaintiff does not use the word "consecutive," the allegations in count II make clear that Collins was injured at some point between her transport by Superior to Alden, her stay at Alden, and her subsequent transport home.

*Res ipsa loquitur* applies when a thing that caused the injury is shown to be under the management of the party charged with negligence and the accident itself affords reasonable evidence in the absence of an explanation by the party charged. *Metz*, 32 Ill. 2d at 448-49. Further, as noted above, the plaintiff bears the burden of proving: (1) that the occurrence is one that ordinarily does not occur in the absence of negligence and (2) that the defendant had the exclusive control of the instrumentality that caused the injury. *Dyback*, 114 Ill. 2d at 242. Under the doctrine of *res ipsa loquitur*, the facts of the occurrence show *prima facie* evidence of the defendant's negligence if these elements are established. *Dyback*, 114 Ill. 2d at 242.

■ Here, in count II, paragraph 10, of the complaint, plaintiff alleged that Collins' injury occurred during the period of time when she was under Superior's and/or Alden's management and control. Further, the reviewing physician's supplemental report stated, "[I]t is my opinion, to a reasonable degree of medical certainty, that either [Superior] and/or [Alden], negligently moved or handled Laura Collins and thereby caused injury ***." Based on the injuries suffered, it can be inferred that the instrumentality that caused the injury in this case was Superior's and/or Alden's handling of Collins while she was in their respective care. Superior argues that, because there were two defendants, plaintiff cannot, and does not, plead that it was Superior alone that controlled the instrumentality of the injury, a requirement necessary for a successful cause of action for *res ipsa loquitur*. However, this requirement frustrates the essence of *res ipsa loquitur*, which allows proof of negligence by circumstantial evidence when the direct evidence concerning the cause of injury is primarily within the knowledge and control of the defendant. *Metz*, 32 Ill. 2d at 448-49.

Further, as noted above, the *Samansky* decision, relying upon *Gatlin*, holds that a plaintiff need not present conclusive proof of which one of the defendants exercised control over the instrumentality of the injury at the time that the condition causing the plaintiff's injuries was created. *Samansky*, 208 Ill. App. 3d at 388. *Samansky* further held that a plaintiff is neither required to show that his injuries were more probably caused by one defendant than the other defendant, nor must he eliminate all causes of his injuries other than the negligence

of one or more of the defendants. *Samansky*, 208 Ill. App. 3d at 388. Here, plaintiff has named Superior and Alden in her complaint. Count II, paragraph 10, of the complaint alleged that plaintiff's injury occurred during the period of time when she was under the defendants' control and management. Under these specific facts, we conclude that where there are only two defendants who had consecutive control over plaintiff, and either one could have caused plaintiff's injuries, and both are named in the complaint, the complaint is sufficient for pleading purposes to raise the inference of negligence under the doctrine of *res ipsa loquitur*.

In *Kolakowski v. Voris*, 83 Ill. 2d 388, 415 N.E.2d 397 (1980), the plaintiff, who had a history of chronic back problems, sued Drs. David Voris, K.S. Parameswar, and Leonard Smith and Mercy Hospital (Mercy) for injuries suffered in connection with a fusion operation conducted on his back. Dr. Voris, a neurologist, was engaged as a consultant to Dr. John Caserta, the plaintiff's family physician. When the plaintiff's back pain became unbearable, it was recommended by Dr. Voris that the plaintiff undergo fusion surgery. The surgery was performed August 24, 1973, with Drs. Voris and Parameswar removing a disc from the patient's spine. Dr. Smith, an orthopedic surgeon, implanted a "plug" of bone into the area where the disc had been removed. As a result of the surgery, the plaintiff lost the use of his limbs and became a virtual quadriplegic.

As noted above, the plaintiff brought a negligence action against Voris, Parameswar, and Smith. Mercy was sued on separate counts based on *res ipsa loquitur*. Mercy moved for summary judgment, which was granted by the trial court and the appellate court reversed. On appeal to the supreme court, Mercy, among other things, claimed that *res ipsa loquitur* was inapplicable because it did not have exclusive control over the injuring instrumentality, a requirement for applying the doctrine.

Quoting the Supreme Court of California's decision to apply *res ipsa loquitur* in *Ybarra v. Spangard*, 25 Cal. 2d 486, 490-92, 154 P.2d 687, 689-90 (1944), our supreme court stated:

" 'The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. \*\*\* [I]t is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be

entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability.

\* \* \*

\*\*\* The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation.' [Citation.]" *Kolakowski*, 83 Ill. 2d at 395-96.

Relying upon this language, the court found that the plaintiff, at the time of the alleged injury, was placed in the care and custody of the named defendants. *Kolakowski*, 83 Ill. 2d at 396. The court also rejected Mercy's theory that whenever a doctor acting in the capacity of an independent contractor participates in a surgery in a defendant hospital, the element of exclusive control by the hospital ceases. At the time of surgery, each owed an independent duty to the patient and exercised concurrent control over the operation and equipment. *Kolakowski*, 83 Ill. 2d at 396. As a result, the court found that the control necessary to apply *res ipsa loquitur* had been met and that the burden shifted to the hospital to dispel the inference of negligence. *Kolakowski*, 83 Ill. 2d at 396-97.

Like the plaintiff in *Kolakowski*, plaintiff's decedent was placed in the care and custody of the named defendants. The control, at one time or another, of one or more of the instrumentalities that might have harmed plaintiff was in the hands of each defendant here. While plaintiff's decedent in the instant case was not rendered unconscious during an operation, she lacked the knowledge, control, and ability to identify the injuring instrumentality. As in *Kolakowski*, Superior and Alden each owed a duty to Laura Collins. Each exercised "consecutive" control over her care, first Superior, then Alden, and then Superior again. We, too, think the burden of initial explanation rests with defendants. Therefore, we find that the element of control necessary for the application of *res ipsa loquitur* was pled in the instant case.

In support of its argument, Superior relies on *Loizzo v. St. Francis Hospital*, 121 Ill. App. 3d 172, 459 N.E.2d 314 (1984), and *Golden v. Kishwaukee Community Health Services Center, Inc.*, 269 Ill. App. 3d 37, 645 N.E.2d 319 (1994). According to Superior, *Loizzo* and *Golden* addressed *res ipsa loquitur* negligence theories asserted against two or more independent, different defendants that provided different treatment at different times in different locations during the time period in which the alleged injuries occurred.

In *Loizzo*, the plaintiff sought damages for personal injuries suffered by a catheter that was negligently left in his body during surgery. On March 30, 1977, the catheter was discovered at defendant St. Francis Hospital by defendants Dr. Edward Pinsel and Dr. A. Jerald Rothenberg. The plaintiff had been previously hospitalized at defendant Northwest Community Hospital on December 16, 1976, December 25, 1976, and March 21, 1977, for severe chest pain. At the time of these hospitalizations, the plaintiff was under the care of defendants Dr. Miles Lynch, Dr. John Lynch and Dr. Joseph Franger. On the latter two occasions, the plaintiff was admitted through the emergency room of Northwest Community Hospital, which was staffed by physician employees of defendant Medical Emergency Associates.

The plaintiff filed an amended complaint alleging *res ipsa loquitur* against all of the defendants. However, the amended complaint did not allege that the plaintiff's hospitalizations at St. Francis Hospital and Northwest Community Hospital were the only occasions where he underwent invasive procedures at a hospital. To the contrary, the plaintiff had been hospitalized at Norwegian American Hospital for a bladder ailment. The defendants denied placing the catheter in the plaintiff's body and denied knowledge of the person or persons who inserted the catheter. The plaintiff proffered no evidence contrary to the defendants' contentions.

Each defendant moved for summary judgment based upon the plaintiff's failure to show when, where, or by whom he was injured and the defendants' contentions that they had not placed the catheter in the plaintiff's body. The trial court denied each of the defendants' motions, but the defendants renewed their motions for summary judgment under the supreme court's holding in *Spidle v. Steward*, 79 Ill. 2d 1, 402 N.E.2d 216 (1980). This time, the trial court, finding that the plaintiff failed to show the requisite exclusiveness of control of the instrumentality causing the plaintiff's injuries, granted summary judgment in favor of the defendants. The plaintiff appealed.

The appellate court stated:

"In cases of medical malpractice against multiple defendants the doctrine has been held applicable where the defendants were in joint control of the agency causing the injury. Conversely, the doctrine has been held not applicable against multiple defendants where it was not shown that they were in joint or exclusive control of the injuring agency. [Citations.]" *Loizzo*, 121 Ill. App. 3d at 179.

It further found that the defendants were not acting jointly with each other. Specifically, the court held:

"The situation here involves different treatment by different entities at different times in different locations. Neither plaintiff nor

the defendants have knowledge of the who, when, or where questions surrounding plaintiff's injury. Without knowledge of the event causing the injury, it cannot be said under the facts here that any medical personnel who treated plaintiff was more probably negligent than any other. [Citation.] Further complicating the matter is the fact that the catheter may have been inserted by a non-named medical provider." *Loizzo*, 121 Ill. App. 3d at 180.

We find *Loizzo* distinguishable for several reasons. First, the *Loizzo* court recognized that the plaintiff's amended complaint "[did] not allege that plaintiff's hospitalizations at St. Francis and Northwest Community hospitals were the only occasions in which he was treated at a hospital or in which he underwent invasive procedures." *Loizzo*, 121 Ill. App. 3d at 175. Instead, the evidence showed that the plaintiff had been treated for a bladder ailment at Norwegian American Hospital, a party not named in the plaintiff's amended complaint. Here, unlike *Loizzo* where a known medical provider was not named, the plaintiff named Superior and Alden. Thus, all of the parties allegedly responsible for Collins' injuries were named in the complaint. The instant record provides no evidence of an unnamed third party.

Second, *Loizzo* was a summary judgment case where the defendants affirmatively asserted that they had no control over the catheter and these assertions were not contradicted by any evidence proffered by the plaintiff. Here, we must only determine whether the allegations in count II of the complaint as pled raised the inference of negligence under the doctrine of *res ipsa loquitur* to survive a dismissal under section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000). To do so, plaintiff was required to establish a *prima facie* showing of Superior's negligence by demonstrating that the injury does not usually happen in the absence of negligence and that Superior was in exclusive control of the instrumentality that caused the injury. *Barkei*, 176 Ill. App. 3d at 688. Our review of the allegations in count II and accompanying supplemental physician's report indicates plaintiff alleged that the injuries to Collins would not have occurred in the absence of negligence by Superior and/or Alden and that the injuries to Collins occurred while under Superior and/or Alden's control. Thus, we find that count II alleged a *prima facie* showing of Superior's negligence.

Third, the court in *Loizzo* noted that the defendants were not acting jointly and that the situation involved "different treatment by different entities at different times in different locations." *Loizzo*, 121 Ill. App. 3d at 180. Superior suggests that the facts in the instant case are analogous to those in *Loizzo* because Superior merely transported Collins to and from Alden and could not be responsible for anything that

happened to Collins while at Alden. Thus, Superior claims that it was providing different services at different times and different locations.

In our view, the facts in *Loizzo* are different in this regard. In *Loizzo*, the plaintiff was hospitalized on five separate occasions at both St. Francis Hospital and Northwest Community Hospital and was seen by numerous doctors during these visits. In the instant case, Collins was transported by Superior to Alden and back home within a six-day period. While Superior and Alden provided different services, they both exercised consecutive control over Collins during the entire period of time alleged in plaintiff's complaint. Further, in count II of the same pleading, plaintiff alleged that Collins' injuries "occurred during the period of time when she was under defendants' control and management." Thus, an inference of *res ipsa loquitur* negligence was alleged against Superior and Alden, the only defendants charged with the transport and care of Collins. For the reasons above, we find *Loizzo* distinguishable.

In *Golden*, also relied upon by Superior, the plaintiff was severely injured in a motorcycle accident. After the accident, paramedics transported the plaintiff to Kishwaukee Community Hospital (Kishwaukee). At the Kishwaukee trauma room, the plaintiff was treated by Dr. Brandon, Dr. Biscan, nurse Jan Heal, and nurse anesthetist James Dionisopoulos. Dr. Brandon later decided to transfer the plaintiff to Skokie Valley Hospital (Skokie Valley) in the plaintiff's hometown because it was close to plaintiff's family and it had long-term care facilities and medical specialists that Kishwaukee could not provide. Hospital personnel at Kishwaukee were unable to contact plaintiff's family.

The plaintiff was taken to Skokie Valley by ambulance. At the time, he could move his limbs to a degree and was responsive. He was seen at Skokie Valley by Dr. Peckler, Dr. Rich, Dr. Stilp, and Dr. Goldin. The next morning, the plaintiff was unable to move his extremities and remained paralyzed from the neck down.

The plaintiff ultimately filed a second amended complaint which contained *res ipsa loquitur* counts alleging that the treatment he received from Kishwaukee, Skokie Valley and the aforementioned doctors either caused or contributed to his paralysis. The plaintiff maintained that all defendants exercised joint control because Kishwaukee improperly transferred him to Skokie Valley, a hospital that was incapable of treating his injuries. The trial court struck the *res ipsa loquitur* counts in the plaintiff's second amended complaint on the basis that the plaintiff failed to establish "exclusive control." *Golden*, 269 Ill. App. 3d at 43. The plaintiff appealed.

On review, the appellate court found that the plaintiff failed to

demonstrate that the defendants acted jointly. Citing *Loizzo*, the *Golden* court found that because the plaintiff had received "different treatment by different entities and persons at different times in different locations[,] the requisite control was not shown as to permit application of the *res ipsa loquitur* doctrine." *Golden*, 269 Ill. App. 3d at 43.

*Golden* is also distinguishable from the instant case. First, the appellate court noted that the plaintiff did not add the *res ipsa loquitur* counts until nine years after the case had been filed and had already been assigned for trial. It also found that the trial court, within its discretion, should have determined that the plaintiff's untimely motion prevented the defendants from completing the necessary discovery and preparation of a *res ipsa loquitur* defense in time for trial. *Golden*, 269 Ill. App. 3d at 43. Thus, the appellate court opined that leave to amend the complaint to add the *res ipsa loquitur* counts should never have been granted.

Second, at least some evidence in *Golden* demonstrated that the sole cause of the plaintiff's injury occurred at Skokie Valley. It is clear that the plaintiff received treatment from different medical personnel at Skokie Valley. The plaintiff's own expert witness opined that the plaintiff became a quadriplegic at Skokie Valley under the care of its doctors. Such facts demonstrated that the injuring instrumentality was under the control of medical personnel at Skokie Valley.

Superior suggests that the facts in *Golden* are analogous to those in this case because Superior and Alden were providing different treatment at different times at different facilities. While Superior and Alden provided different treatment at different times at different facilities, they each exercised consecutive control over Collins at the time she was allegedly injured.

Plaintiff alleged that her mother's injury occurred while under Superior and Alden's management and control. Plaintiff was not required to eliminate all possible causes of her mother's injuries. *Gatlin*, 137 Ill. 2d at 298. Instead, she was required to plead the requisite elements for the doctrine of *res ipsa loquitur* to apply. Here, as we noted above, plaintiff has done so and we find *Golden* to be inapposite.

For the reasons above, we reverse the trial court and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

BURKE and GARCIA, JJ., concur.