# Illinois Official Reports

## Appellate Court

---

***Krivokuca v. City of Chicago*, 2017 IL App (1st) 152397**

---

| | |
|---|---|
| Appellate Court Caption | MIRKO KRIVOKUCA, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-2397 |
| Filed | February 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-7598; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Deutschman & Associates, P.C., of Chicago (Jeffrey S. Deutschman and Bradley A. Skafish, of counsel), for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Carl Newman, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this negligence action against the defendant-appellee the City of Chicago (City), plaintiff-appellant Mirko Krivokuca (plaintiff) appeals from (1) the order of the circuit court granting the City's motion to dismiss the second negligence count of the plaintiff's complaint premised upon the doctrine of *res ipsa loquitur* and (2) the subsequent order granting summary judgment to the City with respect to the first count of the complaint asserting ordinary negligence. We affirm the circuit court's orders in favor of the City.

¶ 2                                                    BACKGROUND

¶ 3    On the morning of April 18, 2013, the plaintiff was driving his pickup truck near the intersection of 96th Street and Houston Avenue in Chicago. According to his pleadings, after the vehicle struck a pothole, "a sinkhole opened up in the road, causing the entire car to fall into the sinkhole." At his deposition, the plaintiff testified that the ground suddenly opened up and the back of his vehicle sank several feet below the ground. The plaintiff called 911, and was transported by ambulance to a hospital, where he was treated for various injuries. His vehicle was later removed from the sinkhole and impounded by the City. The plaintiff claims that his vehicle was later destroyed by the City without providing him notice.

¶ 4    On July 2, 2013, the plaintiff filed his initial complaint, containing two counts. The first count for negligence alleged that the City was liable for, *inter alia*, failing to properly maintain the roadway and sewers near the site and "[f]ailing to repair defects *** which it knew or should have known posed a risk of property damage and injury" to members of the public.

¶ 5    Count II of the complaint was entitled "Res Ipsa Loquitur." Count II pleaded that the City was liable to the plaintiff because "a sinkhole does not ordinarily open in a street in the absence of negligence" by the party controlling it, that the street and sewer system were under the exclusive control of the City, and that the plaintiff did not contribute to causing the sinkhole.

¶ 6    On October 3, 2013, the City filed a motion to dismiss count II of the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure, which permits dismissal of a complaint where a claim is barred by "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). The City asserted that the *res ipsa loquitur* count could not be maintained in light of section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act), which provides:

    "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2014).

¶ 7    The City argued that the Act's requirement of "actual or constructive notice" of a dangerous condition in order to hold the City liable precluded recovery under a *res ipsa loquitur* theory. The City reasoned that *res ipsa loquitur* requires only two elements—that the occurrence would not ordinarily occur in the absence of negligence and that the defendant had

exclusive control of the instrumentality that caused injury—but did not require prior notice of a dangerous condition. The City argued that a *res ipsa loquitur* claim could not be asserted against a municipal defendant, since the Act "bars premises liability claims against municipalities unless plaintiff can prove prior notice of a dangerous condition."

¶ 8 The plaintiff filed a response to the motion to dismiss the *res ipsa loquitur* count on October 16, 2013. The plaintiff did not dispute the application of section 3-102(a) of the Act to his lawsuit but argued that it did not bar a *res ipsa loquitur* claim because the Act "did not impose any new duties or rights that were not available under the common law." The plaintiff cited two decisions (both decided before passage of the Act) which applied the *res ipsa loquitur* doctrine against a municipal defendant. See *Roberts v. City of Sterling*, 22 Ill. App. 2d 337 (1959); *Bolger v. City of Chicago*, 198 Ill. App. 123 (1916).[1] The plaintiff acknowledged that these decisions predated the Act but nevertheless maintained they supported "the liability of municipalities based on *res ipsa loquitur* *** since section 3-102(a) did not change the common law rules relating to the right and liabilities of municipalities concerning their real property." The plaintiff claimed that *res ipsa loquitur* applied in this case because the City had "complete control" and knowledge of the conditions of the street and underground structures at the sinkhole site, and also asserted that the City had "actual notice or constructive notice of such facts and circumstances as would, by the exercise of reasonable diligence, lead a prudent person to the knowledge that a dangerous condition existed."

¶ 9 On November 12, 2013, the City filed a reply in further support of its motion to dismiss, in which it argued that the pre-Act decisions cited by the plaintiff did not control, and that the notice requirement in the Act precluded application of *res ipsa loquitur*.

¶ 10 On January 27, 2014, the City filed its answer to the original complaint. With that answer, the City asserted "statutory defenses" under section 3-102(a) of the Act that the street and underground structures at the site of plaintiff's alleged injury were "reasonably safe" and that it lacked either actual or constructive notice of an unreasonably dangerous condition, as required to impose liability under section 3-102(a).

¶ 11 The record on appeal does not include a transcript from any hearing on the motion to dismiss. However, on January 30, 2014, the court entered an order granting the City's motion and dismissing the *res ipsa loquitur* count (count II) with prejudice.

¶ 12 Following the dismissal the *res ipsa loquitur* count, the parties engaged in discovery, during which it was revealed that the City had repaired a water main leak in January 2013 near the site of the April 2013 sinkhole.

¶ 13 On August 12, 2014, the parties deposed Timothy Dowdy and John Hosty, City personnel who had responded to the January 2013 leak and April 2013 sinkhole, respectively.

¶ 14 Dowdy, a foreman of water pipe construction for the City, had responded to the January 2013 leak. Dowdy testified that he had performed work near the intersection of 96th Street and Houston Avenue in response to a report of water percolating through a parkway. Dowdy observed "a small leak coming up in the grass in the parkway" south of the intersection. Dowdy's crew excavated the street and parkway and accessed the water main. He found a "small circumference crack in the water main" which he described as "a hairline crack all the way around" the pipe.

---

[1]Illinois Appellate Court decisions before 1935 are not precedential. *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838, 844 (1999).

¶ 15    The water main at the site had a six-inch diameter. Dowdy testified that "a minimum size of eight inches is used in today's construction," although he did not know when that change was made. He agreed that since the main had a six-inch diameter, it was probably an "original pipe" but he had "no idea" how old it was. Asked if it could be 100 years old or more, he answered: "it could be. I have no idea."

¶ 16    Dowdy testified that he repaired the January 2013 leak by installing a repair clamp, which "goes over the entire pipe and tightens down, a watertight seal." He testified that the leak was completely resolved by the clamp and that such a repair "will last forever." Dowdy did not return to the site after the January 2013 repair.

¶ 17    Dowdy was shown a work order concerning the April 2013 sinkhole repair. He acknowledged "it could be the same water main" as the January 2013 leak but could not tell if the April 2013 water main break was at the same location as his January 2013 repair.

¶ 18    Dowdy testified that he is not an engineer and did not know the cause for the January 2013 leak. Dowdy answered negatively when asked if the January 2013 leak caused the sinkhole in April 2013; he testified that "there was no leaking" after his repair in January 2013, and he had not seen anything else at that time to cause a concern.

¶ 19    John Hosty, a water pipe foreman with the City, testified that on April 18, 2013, his crew was dispatched to fix a broken water main at a sinkhole south of the intersection of 96th Street and Houston Avenue. Hosty testified that a section of approximately 20 to 30 feet of the water main "was just collapsed" to a lower elevation from the rest of the water main. Hosty's crew replaced approximately 100 feet of the water main at the site.

¶ 20    Hosty acknowledged that the water main at the site of the sinkhole was a six-inch diameter main. He agreed that the six-inch diameter indicated that the water main was at least 50 years old, as "Most of the six inch [pipes] were before the [19]50s." Hosty was not aware of any protocols used by the City to identify aging or defective pipes, or how it was decided when the City would replace old sections of pipe.

¶ 21    Hosty recalled that he heard his supervisors refer to a prior repair near the same location. Hosty recalled that, in his work on the water main in April 2013, he found the clamp that had been installed by Dowdy's crew in January 2013. Hosty testified that he observed that the clamp was intact and in "good working order." Hosty denied that the water main break in April 2013 was a sign that the prior repair was not done correctly, and he stated that the crew performing the January 2013 repair "would have known that day" if the repair was not successful.

¶ 22    Hosty testified that he had been involved in replacing sections of pipe that were from "Before the 50's," but he answered negatively when asked if there is a certain age at which the City starts replacing pipes. Hosty testified that sinkholes were "kind of common" and can be caused by broken water mains. However, he testified that sinkholes may also be caused by "voids in sewers," meaning a crack or hole in the sewer pipe, independent of the water main.

¶ 23    Hosty testified that at the sinkhole site in April 2013 he observed a broken sewer as well as a broken water main. Hosty could not tell if the broken sewer was caused by the water main break or vice versa. He agreed it was possible that the water main could have broken due to the collapsing street and sinkhole (rather than the broken main causing the sinkhole). He also agreed that erosion caused by heavy rain could cause a sinkhole and that it is not possible to know exactly what caused the April 2013 sinkhole.

¶ 24 Hosty answered negatively when asked if it was "out of the ordinary to have two water main breaks at essentially the same location in a period of three months." He stated that he had seen this before with older sections of pipe, but it was "[n]ot very common." Hosty did not know of any reason for there to be two water main breaks at the same location in January and April 2013, or if this was merely coincidence.

¶ 25 On September 4, 2014, the plaintiff filed an amended complaint, which realleged the negligence claim in count I and the *res ipsa loquitur* claim in count II (acknowledging that, as count II was previously dismissed, it was reasserted strictly for purposes of appeal). The amended complaint also added count III, a claim for property damage for the plaintiff's vehicle.

¶ 26 The City answered the amended complaint on October 6, 2014. The City again asserted statutory defenses under section 3-102(a) of the Act that the street and underground structures at the site of the sinkhole were reasonably safe and that the City lacked actual or constructive notice of a dangerous condition at the site. The City's answer also asserted "discretionary immunity" pursuant to section 2-201 of the Act, which provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2014).

¶ 27 On March 16, 2015, the City filed a motion for summary judgment with respect to counts I and III of the complaint. With respect to count I for negligence, the City argued it was entitled to summary judgment pursuant to section 3-102(a) of the Act because it had no notice of the condition causing the sinkhole. Alternatively, the City argued that it was immune by operation of section 2-109 of the Act, which grants public entities immunity for acts for which their employees are not liable (745 ILCS 10/2-109 (West 2014)), in conjunction with section 2-201 of the Act, which provides immunity for injuries resulting from acts involving the exercise of discretion (745 ILCS 10/2-201 (West 2014)). Separately, the City argued that it was entitled to summary judgment with respect to the count for property damage, based upon the plaintiff's failure to exhaust administrative remedies.

¶ 28 On April 14, 2015, the plaintiff filed a response to the motion for summary judgment. In opposing summary judgment, the plaintiff argued "there is testimony that the infrastructure at the location of the sinkhole was approximately 100 years old and there is a reasonable inference that the water main and sewer failed due to age and deterioration." Citing Dowdy's testimony, the plaintiff argued "It is a reasonable inference that an unsafe condition of the water main and/or sewer developed over time that resulted in their failure and collapse" in April 2013. The plaintiff similarly urged that Hosty's testimony supported "an inference that the sinkhole was caused by water leaking from the broken water main and/or broken sewer."

¶ 29 With respect to the City's position that it lacked notice of a dangerous condition pursuant to section 3-102(a), the plaintiff asserted that section 3-102(b) (745 ILCS 10/3-102(b) (West 2014)) "places the burden on the public entity to show it did not have constructive notice of a condition of its property that was not reasonably safe by establishing either that (a) the condition would not have been discovered by an inspection system that was reasonably adequate or (b) the public entity maintained and operated such an inspection system with due care and did not discover the condition." The plaintiff argued that summary judgment could not be granted because the City had failed to present evidence of a reasonably adequate inspection system.

¶ 30    The plaintiff separately argued that the provision of the Act regarding immunity for discretionary acts did not apply because the January 2013 repair was not an exercise of discretion and because "there is no evidence that the sinkhole was caused by any failure of the repair work performed in January 2013."

¶ 31    On May 11, 2015, the court issued a memorandum opinion and order granting the City summary judgment with respect to the personal injury claims pleaded in counts I and II. In that order, the trial court agreed with the City that it was immune pursuant to section 3-102(a) of the Act, based on the lack of either actual or constructive notice of the sinkhole or its cause. The court noted the lack of any evidence in the record that the City had actual notice "of any infrastructural defects" causing the sinkhole. The court also found no evidence of constructive notice, finding the "January 2013 water main leak did not and could not provide the City with constructive notice that the water main and the sewer would crack three months later because the causes and locations were distinct." The court noted Hosty's testimony that, in April 2013, he observed that the clamp installed in January 2013 was intact. The court also noted that "Hosty could not determine if the water main and sewer breaks caused the formation of the hole" and that "Hosty testified that sinkholes such as this can be caused by a variety of reasons."

¶ 32    The court agreed that section 3-102(a) "immunized the City from [the plaintiff's] personal injury claims *** because he has failed to establish that the City had constructive notice of the sinkhole or the water main and sewer breaks that may have caused it." Finding the City immune on this basis, the court did not discuss the City's arguments based on sections 2-201 or 2-109 of the Act.

¶ 33    Separately, the court denied the City's motion for summary judgment with respect to the property damage claim in count III, insofar as the City had failed to previously assert, as an affirmative defense, that the plaintiff failed to exhaust administrative remedies.

¶ 34    Shortly after the May 11, 2015 order, the City moved for, and was granted, leave to file an affirmative defense to count III based on the plaintiff's failure to exhaust administrative remedies. After filing that affirmative defense, on June 11, 2015, the City moved for summary judgment with respect to count III.

¶ 35    On July 17, 2015, the court granted the plaintiff's motion for leave to file a second amended complaint, which added a fourth count pleading a negligent misrepresentation claim in connection with the City's destruction of the plaintiff's vehicle.

¶ 36    The plaintiff subsequently voluntarily dismissed counts III and IV of the second amended complaint. On August 19, 2015, the court entered a corresponding order stating that, as the court had previously dismissed counts I and II in its May 11, 2015 order, there were no remaining claims pending. The plaintiff filed a notice of appeal on August 20, 2015.

¶ 37    ANALYSIS

¶ 38    We note that we have jurisdiction as the plaintiff perfected a timely notice of appeal from the August 19, 2015 final order. See Ill. S. Ct. R. 303(a) (eff. Jan. 1, 2015).

¶ 39    The plaintiff's appellate brief challenges (1) the court's January 30, 2014, order granting the City's motion to dismiss count II, which asserted a negligence claim under the theory of *res ipsa loquitur*, as well as (2) the May 11, 2015, order granting summary judgment to the City with respect to the negligence claim in count I.

¶ 40      We first address the propriety of the trial court's order granting the City's motion to dismiss the *res ipsa loquitur* count. The City's motion to dismiss was made pursuant to section 2-619(a)(9) of the Code of Civil Procedure, which permits dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012).

¶ 41      A motion pursuant to section 2-619 of the Code of Civil Procedure "admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. [Citation.]" *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A municipality's assertion that it is immune from suit under the Act "is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss. [Citation.]" *Id.* "Our review of a section 2-619 dismissal is *de novo*. [Citation.]" *Id.* at 368.

¶ 42      In granting the motion to dismiss count II of the plaintiff's complaint, the trial court apparently agreed with the City's argument that the notice requirement of the Act is incompatible with the elements of a claim under a *res ipsa loquitur* theory, and thus the Act precludes liability under that theory. Notably, on appeal, the City makes different arguments with respect to *res ipsa loquitur* from the argument asserted in its motion to dismiss before the trial court. However, we need not address these new arguments raised by the City on appeal, as our *de novo* review leads us to agree that the notice requirement of section 3-102(a) of the Act provided "affirmative matter" precluding the plaintiff from proceeding under a *res ipsa loquitur* theory.

¶ 43      *Res ipsa loquitur*, although often pleaded separately from an ordinary negligence claim, is not truly an independent cause of action, but rather a "rule of evidence relating to the sufficiency of plaintiff's proof" to establish a defendant's negligence. (Internal quotation marks omitted.) *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 816 (2003). "The *res ipsa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control ***." (Internal quotation marks omitted.) *Id.* The purpose of the doctrine "is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." (Internal quotation marks omitted.) *Id.*

¶ 44      However, the Act clearly requires more than such "circumstantial evidence" of the nature of the injury to prove a municipality's negligence liability. The Act requires the plaintiff to prove that the municipality "ha[d] actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2014). That is, we agree with the contention raised by the City in the trial court that the assertion of negligence under this theory is incompatible with the notice requirement imposed by the Act.

¶ 45      The plaintiff cites no authority since passage of the Act describing its impact, if any, on the availability of *res ipsa loquitur* asserted against a municipal defendant. Rather, the plaintiff cites two pre-Act cases applying the doctrine to municipal defendants and contends that they are still good law, notwithstanding the Act. See *Bolger*, 198 Ill. App. at 127 (affirming jury verdict for plaintiff's injury resulting from underground explosion because City had exclusive control of underground infrastructure and such an accident "ordinarily would not happen if

those who had charge exercised proper care"); *Roberts*, 22 Ill. App. 2d at 355-56 (affirming jury verdict for injury caused by collapsing sidewalk, as the sidewalk was under the sole control of the city, the collapse was "such as in the ordinary course of events does not happen if due care has been exercised," and the jury could reasonably find that the city had either actual or constructive notice of a dangerous condition). Based on these pre-Act decisions, he argues that the Act does not bar his assertion of a *res ipsa loquitur* theory against the City, because section 3-102(a) "merely codified existing common law duty owed by municipalities to maintain their property in a reasonably safe condition" and "did not impose any new duties or rights that were not available under the common law."

¶ 46    It is true that our supreme court has held that "The Act does not create new duties" but "merely codifies those duties existing at common law[ ] to which the subsequently delineated immunities apply." (Internal quotation marks omitted.) *Van Meter*, 207 Ill. 2d at 368. However, whether the Act created new municipal duties does not detract from the fact that the Act imposed statutory barriers to imposing liability against a public entity. As stated by our supreme court, "The Act serves to protect local public entities and public employees from liability arising from the operation of government. [Citations.] By providing immunity, the General Assembly sought to prevent the dissipation of public funds on damage awards in tort cases. [Citation.]" (Internal quotation marks omitted.) *Id.* As the purpose of the Act is plainly to limit the circumstances under which a municipality may be held liable for negligence and since the notice provision in section 3-102(a) of the Act imposes an additional element of proof that is not contemplated by the common law *res ipsa loquitur* doctrine, our *de novo* review leads us to conclude that the motion to dismiss count II of the complaint was properly granted. Plainly stated, the plaintiff did not and could not under the known facts satisfy the notice requirement.

¶ 47    We next turn to the trial court's order granting summary judgment with respect to the negligence claim pleaded in count I. As set forth below, we find that the plaintiff failed to offer any evidence that the City had notice of a dangerous condition, as required to establish liability under section 3-102(a) of the Act. As there was no genuine materially factual issue as to the City's lack of notice, we affirm the grant of summary judgment with respect to count I.

¶ 48    The applicable summary judgment standard is well-settled. "Summary judgment is appropriate when 'the pleadings, depositions, and admissions on file *** show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [Citation.] We review a ruling on summary judgment de novo." *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 12. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. [Citation.] Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. [Citations.]" *Id.* ¶ 13.

¶ 49    The City's motion for summary judgment was premised upon section 3-102(a) of the Act, which provides, in relevant part, that a public entity "shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2014).

¶ 50    "Constructive notice under section 3-102(a) of the Act is established where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known of it. [Citations.] The burden of proving notice is on the

party charging it." (Internal quotation marks omitted.) *Burke v. Grillo*, 227 Ill. App. 3d 9, 18 (1992). Moreover, we have held that "Section 3-102(a) requires proof that the defendant had timely notice of the specific defect that caused the plaintiff's injuries, not merely the condition of the area." *Zameer*, 2013 IL App (1st) 120198, ¶ 16. Thus, in this case, the plaintiff bears the burden of proving that the City had at least constructive notice of a specific condition that was not reasonably safe.

¶ 51 In applying section 3-102(a), "[t]he question of notice is generally one of fact, but it becomes a question of law if all the evidence when viewed in the light most favorable to the plaintiff so overwhelmingly favors the defendant public entity that no contrary verdict could ever stand. [Citations.]" *Id.* ¶ 14. Summary judgment is appropriate when the plaintiff "fail[s] to meet [his] burden to provide facts showing that the City had constructive notice" and there is "no genuine issue of material fact *** regarding constructive notice." *Burke*, 227 Ill. App. 3d at 18, 19 (affirming summary judgment for City where plaintiff tripped on hole in sidewalk but there was "no evidence that the hole was plainly visible or that it was apparent for a long time prior to the injury"); see also *Zameer*, 2013 IL App (1st) 120198, ¶¶ 22, 24 (affirming summary judgment where plaintiff "has not presented evidence that would raise an issue of material fact as to the length of time the defect existed" and "failed to meet her burden to provide facts showing that the city had constructive notice of the condition").

¶ 52 Even viewing the record in this case in the light most favorable to the plaintiff, we find that there is simply no evidence whatsoever that the City had actual or constructive notice of a dangerous condition that allegedly caused the sinkhole. Because the plaintiff could not meet this requirement of the Act, summary judgment in favor of the City was appropriate.

¶ 53 On appeal, the plaintiff does not attempt to argue that there was any evidence of *actual* notice of a dangerous condition leading to the April 2013 sinkhole. Rather, the plaintiff asserts that there is a genuine issue of fact on the question of constructive notice. Relying solely on the deposition testimony of Dowdy and Hosty, the plaintiff on appeal asserts that the City had constructive notice of a dangerous condition, namely, the "aged and deteriorated condition of the infrastructure leading to failure and collapse of the water main and/or sewer, and thus the creation of the sinkhole."

¶ 54 Specifically, the plaintiff cites Dowdy's testimony that the six-inch water main "could be" 100 years old, as well as Hosty's testimony that a six-inch main indicates it was installed before the 1950s. The plaintiff also cites Hosty's testimony that it is "not very common" to have two water main breaks at the same location within a three month period but that he has seen this occur with older sections of pipe. The plaintiff also relies on Hosty's testimony that a broken water main is one possible cause of a sinkhole and that he did not know of any City protocol to identify aging or defective pipe.

¶ 55 The plaintiff argues that such testimony raises a genuine issue of material fact as to the City's constructive notice of "the aged and deteriorated condition of the infrastructure leading to failure and collapse of the water main and/or sewer, and thus the creation of the sinkhole." The plaintiff argues that the testimony of Dowdy and Hosty indicate that the City "knew that the infrastructure in the area in question was aged and deteriorated." The plaintiff's reply brief argues that Dowdy and Hosty's testimony was "not merely evidence that the infrastructure at the location of the sinkhole was old, but evidence that [the City] knew or should have known that the infrastructure at that location was deteriorated and defective and knew that an unsafe condition existed that would cause a washout or sinkhole."

¶ 56    The plaintiff's argument suggests that, based on the testimony regarding the age of the pipe, an inference can be made that the City was on notice of a dangerous condition. We disagree. At most, Hosty's and Dowdy's testimony suggested that the water main was old and that a water main break is one potential cause of a sinkhole. There was simply no testimony describing the water main as "deteriorated" or suggesting that the City had notice of such deterioration. Further, there was no testimony that the age of the water main makes it *per se* deteriorated so as to automatically make it a dangerous condition.

¶ 57    Apparently, the plaintiff expects us to assume, without expert testimony, that old pipes constitute a dangerous condition so as to meet the constructive notice requirement. However, there is absolutely nothing in the record to support that premise as a general matter or to suggest that this particular pipe was deteriorated prior to formation of the sinkhole. Notably, the plaintiff could have, but did not, elicit testimony (including expert opinions) concerning the relationship between the water main's age, deterioration, and any corresponding likelihood of sinkholes. Further, even assuming that an older pipe is generally more susceptible to deterioration, there was no evidence that the City had constructive notice of the "specific defect that caused the plaintiff's injuries." *Zameer*, 2013 IL App (1st) 120198, ¶ 16.

¶ 58    Thus, we reject the suggestion that Hosty's and Dowdy's testimony created a material issue of fact as to whether the City had constructive notice of a dangerous condition that caused the sinkhole. As the plaintiff could not meet this requirement to establish the City's liability under section 3-102(a) of the Act, summary judgment was warranted.

¶ 59    Notably, the plaintiff's briefing also discusses section 3-102(b) of the Act, which provides:

"A public entity does not have constructive notice of a condition *** within the meaning of Section 3-102(a) if it establishes either:

(1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate ***; or

(2) The public entity maintained and operated such an inspection system with due care and did not discover the condition." 745 ILCS 10/3-102(b) (West 2014).

The plaintiff argues that the City offered no evidence of a "reasonably adequate inspection system" to demonstrate that it lacked constructive notice pursuant to section 3-102(b). While this may be the case, it is simply irrelevant in light of the plaintiff's failure to elicit proof of notice under section 3-102(a).

¶ 60    That is, although section 3-102(b) describes circumstances by which the defendant may prove its lack of constructive notice, it does not relieve the plaintiff of the initial burden, codified in section 3-102(a), of proving the defendant's actual or constructive notice. As discussed, the testimony relied on by the plaintiff in this case did not offer any proof of such requisite notice. Thus, section 3-102(a) shields the City from liability, regardless of whether the City proved a reasonably adequate inspection system pursuant to section 3-102(b).

¶ 61    For the foregoing reasons, we find that the plaintiff failed to present a genuine issue of material fact as to whether the City had actual or constructive notice of a dangerous condition within the meaning of section 3-102(a). As the plaintiff failed to offer any evidence that could meet this statutory prerequisite, summary judgment was properly granted in favor of the City with respect to the negligence claim pleaded in count I.

¶ 62        For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 63        Affirmed.