# Illinois Official Reports

## Appellate Court

---

**_Burns v. City of Chicago_, 2016 IL App (1st) 151925**

---

| | |
|---|---|
| Appellate Court Caption | LLOYD BURNS, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1925 |
| Filed | July 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-1068; the Hon. Janet A. Brosnahan, the Hon. John P. Callahan, Jr., and the Hon. Susan Zwick, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Ocasek, of Cooney & Conway, of Chicago, for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1     This is a trip and fall case involving a crosswalk with a surface in compliance with Americans with Disabilities Act (ADA) requirements. Plaintiff Lloyd Burns alleges the defendant City of Chicago (City) (i) negligently installed the ADA sensory tiles, (ii) failed to inspect the area of sidewalk where he tripped, (iii) failed to repair that portion of sidewalk, and (iv) failed to warn him of the dangerous nature of the sensory tiles. After the trial court dismissed Burns' allegations with regard to failure to warn, the City moved for and was granted summary judgment. Burns challenges these rulings.

¶ 2     We affirm, finding (i) exposure of the raised ADA sensory tiles was *de minimis*, (ii) the trial court properly dismissed Burns' failure to warn allegations, (iii) the City lacked constructive notice of the raised tiles, and (iv) the tiles were an open and obvious condition.

¶ 3                                    BACKGROUND

¶ 4     The ADA directs municipalities to install detectable warning surfaces at crosswalks to provide a sensory cue to visually impaired individuals of where a sidewalk ends and a roadway begins. ADA Compliance Guide ¶ 446 (Thompson Information Services 2014). ADA sensory tiles consist of truncated domes aligned in a square or radial grid pattern laid on top of fresh concrete. New sidewalk construction and reconstruction of existing sidewalks must meet ADA standards. The concrete foundation can last up to 15 years, and the tiles wear out in 5 to 10 years. Michael Drake, the general superintendent of the City's department of transportation, testified the tiles can be pushed out of alignment with the sidewalk when trucks drive over them or if an individual attempts to remove the metal screws securing the tiles to the cement foundation.

¶ 5     The City annually installs tiles in 2500 to 3000 new locations. The City maintains existing tiles through the 311 system, which is initiated when an individual calls and reports a defect in a tile. In January 2010, the City installed tiles at the intersection of North Parkside Avenue and West North Avenue. Photographs on the Google Maps website from June 2011 show the tiles were not raised.

¶ 6     On August 15, 2012, around 6 p.m., Burns was walking home on West North Avenue and reached the intersection of North Parkside Avenue. There was "medium" light at the time, it was raining, and Burns did not have a raincoat or an umbrella. Traffic was light. Burns tripped and fell over the tiles at the intersection and was injured. Burns confirmed in his deposition that he crosses this intersection at least once a week and had never noticed the condition of the tiles before he tripped. Burns testified he was not distracted when he approached the intersection and was watching the traffic as he tripped.

¶ 7     Although Burns did not see what he tripped on before he fell, afterwards he noticed the tiles were raised above the sidewalk level. In his deposition, Burns estimated the difference was 1½ inches. Burns' counsel took photographs of the tiles and the adjacent sidewalk. One photograph using a ruler indicates the tiles Burns tripped over were raised three-fourths of an inch above the sidewalk.

¶ 8     Burns filed a two-count complaint against the City and Arrow Road Construction (Arrow). The count against Arrow was later dismissed by agreement. In his second amended complaint, Burns alleged the City (i) negligently installed the tiles, (ii) failed to inspect the area of

sidewalk where he tripped, (iii) failed to repair that portion of sidewalk, and (iv) failed to warn him of the dangerous nature of the tiles.

¶ 9     The City moved to dismiss Burns' failure to warn claim under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)), arguing that it was precluded from liability for its failure to provide barricades or warning signs in pedestrian areas under section 3-104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/3-104 (West 2012)). The trial court granted the motion.

¶ 10    Burns filed a third amended complaint, adding an additional claim under the doctrine of *res ipsa loquitor*. Burns alleged the City was liable for his injuries because his tripping over the tiles constituted an unusual and unexpected result, which does not ordinarily occur absent negligence on the part of the City.

¶ 11    The City moved for summary judgment under section 2-1005(c) of the Code (735 ILCS 5/2-1005(c) (West 2012)), arguing (i) the complained-about condition was *de minimis*, (ii) the City had neither actual nor constructive notice of the condition, and (iii) the condition was open and obvious. The trial court granted summary judgment.

¶ 12    Burns challenges the orders granting the City's motion to dismiss and motion for summary judgment. He argues that (i) the tiles are warning devices, (ii) the raised tiles were not a *de minimis* condition, (iii) the City had constructive notice of the raised tiles, and (iv) the City owed Burns a duty because the raised tiles were open and obvious.

¶ 13                                    STANDARD OF REVIEW

¶ 14    This court reviews ruling on a motion to dismiss under section 2-619 *de novo*. 735 ILCS 5/2-619 (West 2012); *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. Section 2-619(a)(9) provides for involuntary dismissal when affirmative matter avoids the legal effect of or defeats the claim asserted against the defendant. 735 ILCS 5/2-619(a)(9) (West 2012); *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31 ("A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it."). In reviewing a section 2-619(a)(9) dismissal, this court construes all pleadings and supporting documents in the light most favorable to the nonmoving party, here, plaintiff. *Bjork*, 2013 IL 114044, ¶ 21.

¶ 15    We also review a summary judgment ruling *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004). In considering summary judgment, we determine whether a genuine issue of material fact exists and whether the moving party will prevail solely as a matter of law. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). The court does not try issues of fact but must ascertain if any exist. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). The trial court may grant summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012); *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶ 13. We may affirm the trial court's ruling on any basis appearing in the record. *People v. Olsson*, 2015 IL App (2d) 140955, ¶ 17 (appellate court reviews trial court's judgment rather than its reasoning).

¶ 16                                           ANALYSIS
¶ 17                                      De Minimis *Defect*
¶ 18        Burns asserts that a genuine issue of material fact exists as to whether the defect was *de minimis.* Specifically, Burns identifies differences in the construction materials for the tiles and sidewalk and that the tiles are mounted at a slight incline. Although Burns does not have to prove his case at the summary judgment stage, he must present evidentiary facts to support the elements of his cause of action. *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 885 (2009).

¶ 19        In a negligence claim, plaintiff alleges the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and that breach was a proximate cause of plaintiff's injuries. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010); *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶ 14. Whether a duty of care exists presents a question of law for the court to decide. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227 (1996).

¶ 20        Under Illinois law, a municipality has a duty to "exercise ordinary care to maintain its property in a reasonably safe condition" (745 ILCS 10/3-102(a) (West 2012)), and this duty extends to keeping sidewalks safe for the purposes for which they are intended and for use of persons exercising reasonable care. *Thorsen v. City of Chicago*, 74 Ill. App. 3d 98, 107 (1979). In assessing injury claims derived from an elevation difference of adjoining municipal sidewalk slabs, Illinois courts apply the *de minimis* rule. *Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1023 (1997). This well-established rule provides that, as a matter of law, defects found in frequently traversed areas are not actionable. *Gleason v. City of Chicago*, 190 Ill. App. 3d 1068, 1070 (1989) (citing *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 604 (1957)).

¶ 21        A sidewalk defect will be considered *de minimis* if a reasonably prudent person would not foresee some danger to persons walking on it. *Arvidson*, 11 Ill. 2d at 605. Because there is a difference of opinion as to what a minor defect entails and no bright-line test or mathematical formula to discern defects, each case turns on its own facts. *Siegel v. Village of Wilmette*, 324 Ill. App. 3d 903, 907 (2001). Usually, a defect approaching a height difference of two inches is actionable. *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993). Plaintiff has the burden to prove that the defect was not *de minimis* and may do so by presenting evidence of the size of the defect and of aggravating circumstances. *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 458 (1994).

¶ 22        The gravamen of Burns' argument centers on aggravating factors making the alleged defect in the sidewalk actionable at law. Burns points to *West v. City of Hoopeston*, 146 Ill. App. 3d 538, 542 (1986), as instructive. In *West*, plaintiff tripped and fell on a sidewalk with a height discrepancy between the slabs of one-fourth to nine-sixteenths of an inch and also a broken area between the slabs that measured two-inches wide. *Id.* at 541. Inside the gap were loose particles, some of which could be loosened by hand. *Id.* "[T]he width and depth of the allegedly defective area should be considered in determining whether that area is of a minor, nonactionable nature." *Id.* at 542. The court considered the two-inch broken area between the slabs wide enough to overcome the otherwise *de minimis* defect so that a reasonable person could anticipate danger walking on the sidewalk. *Id.* at 543.

¶ 23        Citing *West*, Burns argues that the tiles were raised between ¾ to 1½ inches above the sidewalk, constituting aggravating circumstances that establish the condition was not *de minimis*. Burns notes the tiles and the sidewalk were composed of different materials and the tiles were mounted at a slight incline.

- 4 -

¶ 24    Unlike the court in *West*, however, we cannot conclude that aggravating factors exist, despite the difference in composition and the slight incline. Neither condition would cause a reasonably prudent person to foresee some danger to persons walking on it. *Arvidson*, 11 Ill. 2d at 605. Sidewalks traditionally have a slight incline to allow for handicapped persons to enter the sidewalk quickly and safely. And it would be unreasonable to consider ADA compliant tiles, which are mandated by federal law, as an aggravating factor simply because they are composed of different materials than a concrete sidewalk. Under the ADA, the detectible tiles are required to contrast with the surrounding sidewalk to serve as a warning for visually impaired persons. The evidence Burns has presented to prove aggravating circumstances differs from the gap in the sidewalk in *West*, 146 Ill. App. 3d 538, and does not satisfy his burden to show that the defect was not *de minimis*. *Gillock*, 268 Ill. App. 3d at 458.

¶ 25    Burns' reliance on *Rios v. City of Chicago*, 331 Ill. App. 3d 763 (2002), as controlling law does not necessitate a contrary conclusion. Although *Rios* involved a slip and fall, the appellate court remanded the case for evidentiary matters, not due to issues involving aggravating circumstances. *Id.* at 775 ("In sum, none of defendant's assertions cure the prejudicial evidentiary problems that arose during the trial of this matter and plaintiff is entitled to a new trial on that basis.").

¶ 26    Thus, because the height of the raised tiles was insubstantial (see *Birck*, 241 Ill. App. 3d at 122), and no aggravating factors exist for this court to consider, the trial court properly held that the defect in the sidewalk was *de minimis*.

¶ 27                              *Failure to Warn*

¶ 28    Burns asserts the trial court erred when it granted the City's 2-619(a)(9) motions to dismiss Burns' failure to warn paragraph in the original and second amended complaints. The City relied on provisions in the Tort Immunity Act (745 ILCS 10/3-104 (West 2012)) as affirmative matter in both motions to dismiss. Burns argues the Act does not preclude the City from liability because tiles are a traffic-warning device that the City has a duty to maintain and the City breached its duty when it failed to do so. The Act provides immunities and defenses for public entities and public employees arising from a government action. 745 ILCS 10/1-101.1(a) (West 2012); *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412 (1991).

¶ 29    In invoking the Act as an affirmative defense, the City admits the legal sufficiency of Burns' complaint alleging the City failed to warn Burns of a dangerous and defective sidewalk condition. 735 ILCS 5/2-619(a)(9) (West 2012). But under section 3-104 of the Act, neither municipalities nor public employees are liable for injuries caused by their initial failure to provide "distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs." 735 ILCS 10/3-104 (West 2012).

¶ 30    Burns argues that the City installed and then failed to maintain the tiles, creating a greater hazard than what the tiles were designed to protect against. Burns relies on *Parsons v. Carbondale Township*, 217 Ill. App. 3d 637 (1991), for the proposition that once a municipality has installed any traffic warning or control device, it must maintain it. In *Parsons*, the court held that the Tort Immunity Act did not preclude a municipality from liability for failing to use reasonable care. *Id.* We do not find *Parsons* persuasive. At common law, a municipality has a duty to maintain its property in a safe condition. *Havens v. Harris Township*, 175 Ill. App. 3d 768, 770 (1988). But that duty does not extend to creating or erecting public improvements. *West v. Kirkham*, 147 Ill. 2d 1, 14 (1992).

¶ 31    The City installed the tiles in January 2010 and the record shows that the tiles were kept intact at least until June 2011. Sometime between June 2011 and August 15, 2012, the tiles were raised between ¾ to 1½ inches above the sidewalk. This height differential, as discussed, is *de minimis* and does not create a greater hazard than what the tiles were designed to protect against. We hold that the circuit court properly granted the City's motions to dismiss.

¶ 32                                              *Notice*

¶ 33    Burns also contends that the trial court erred in granting the City summary judgment because the City had constructive notice of the raised tiles. The City responds, and the record establishes, that it lacked notice of this condition, thereby precluding liability, citing section 3-102(a) of the Tort Immunity Act. 745 ILCS 10/3-102(a) (West 2012).

¶ 34    The Act precludes local public entities or public employees from liability unless it is proven that they (i) had actual or constructive notice of the existence of a condition, (ii) the condition is not reasonably safe, and (iii) notice occurred in a reasonably sufficient time before an injury to allow measures to remedy, or protect against, the condition. 745 ILCS 10/3-102(a) (West 2012); *Ramirez v. City of Chicago*, 318 Ill. App. 3d 18, 22 (2000). The party charging notice also has the burden of proving notice. *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 14; *Reed v. Eastin*, 379 Ill. 586, 592 (1942). Although the issue of notice typically involves factual determinations, it becomes a question of law and may be decided by the trial court if all of the evidence, when viewed in the light most favorable to the party charging notice, "so overwhelmingly favors the defendant public entity that no contrary verdict could stand." *Perfetti v. Marion County, Illinois*, 2015 IL App (5th) 110489, ¶ 19.

¶ 35    Burns concedes the City did not have actual notice. But what about constructive notice? Under section 3-102(a) of the Act, constructive notice exists when the condition is so evident, plainly visible, or has existed for such duration of time that the public entity should have known of its existence by exercising reasonable care and diligence. *Ramirez*, 318 Ill. App. 3d at 22. Thus, to survive summary judgment, Burns needs to adduce sufficient evidence to support a finding that the City had constructive notice of the raised tiles on which he tripped and sufficient time to take measures to repair the tiles.

¶ 36    Burns cites *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 161 (1979), to maintain that a jury could reasonably infer the tiles were raised for a sufficient length of time so that the City had constructive notice of the defective condition. In *Baker*, the court concluded that several visible cracks in the sidewalk located at a busy intersection across the street from city hall, including the one where plaintiff fell, constituted sufficient evidence to support a finding that defendant had constructive notice. *Id.* Although defendant claimed it did not have actual notice of the specific crack where plaintiff fell, the city street superintendent admitted he had general knowledge of several cracks in the area. *Id.* Based on the street superintendent's admission coupled with the evidence suggesting the defect existed for a long time in an open area, the trial court concluded defendant had constructive notice of the sidewalk condition. *Id.* at 161-62. But, unlike *Baker*, here nothing in the record indicates the length of time the tiles were raised.

¶ 37    The City installed the tiles at the intersection in January 2010. There is a Google Maps photograph of the intersection taken in July 2011, which depicts the tiles properly secured and level with the sidewalk. Burns testified in his deposition that he crossed the intersection at least once a week and had never noticed a problem with the tiles.

¶ 38　　Michael Drake, the general superintendent of the City's department of transportation, testified in his deposition that he had experience overseeing ADA sensory tile installation. After reviewing the 2011 Google Maps photograph and the 2012 photographs of the raised tiles after Burns' injuries, Drake testified that the tiles were raised either by a truck running over them or a person attempting to remove the metal screws from the tiles. Thus, as Burns does not know how long the tiles were raised and as Drake testified that a third party may have raised the tiles sometime after July 2011, Burns has not met his burden to present evidence that would raise an issue of material fact as to how long the defect existed. See *Zameer*, 2013 IL App (1st) 120198, ¶ 14; *Reed*, 379 Ill. at 592.

¶ 39　　We conclude that Burns failed to meet his burden to provide facts showing that the City had constructive notice of the raised tiles. Because there is no genuine issue of material fact as to whether the City had constructive notice, the City is precluded from liability as provided in section 3-102(a) of the Tort Immunity Act.

¶ 40　　We find that the circuit court properly granted the City's motion for summary judgment.

¶ 41　　　　　　　　　　　　　　　*Open and Obvious*

¶ 42　　Finally, Burns contends that a reasonable inference can be made under the open and obvious doctrine that jurors could disagree as to whether the raised tiles were open and obvious.

¶ 43　　In a negligence claim, plaintiff must allege and prove (i) the defendant owed a duty of care to the plaintiff, (ii) the defendant breached that duty, and (iii) the breach was a proximate cause of plaintiff's injuries. *Krywin*, 238 Ill. 2d at 225; *Negron*, 2016 IL App (1st) 143432, ¶ 14. Whether a duty of care exists is a question of law to be decided by the court. *Rhodes*, 172 Ill. 2d at 227. Four factors determine whether a duty exists: (i) the foreseeability that defendant's conduct will cause injury; (ii) the likelihood of injury; (iii) the magnitude of guarding against the injury; and (iv) the consequences of placing that burden on the defendant. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14; *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005). The weight we accord to each factor depends on the circumstances of the case. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18.

¶ 44　　Burns submits that whether the raised tiles were open and obvious presents a question of fact for the jury. The "open and obvious" rule, a common-law construct, precludes liability from injuries sustained on property if the allegedly dangerous condition is easily observable. *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003); see Restatement (Second) of Torts § 343A(1), at 218 (1965) ("possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them"). Illinois courts have defined "obvious" as " 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). But Illinois law permits a limited exception for dangers that are open and obvious, making landowners liable for harms they can anticipate despite the condition being obvious. *Diebert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 434-35 (1990) (discussing adoption of Restatement (Second) of Torts § 343A (1965) in Illinois).

¶ 45　　In cases involving common and obvious conditions, including fire, height, and bodies of water, Illinois jurisprudence assumes individuals will take care to avoid any inherent danger.

*Bruns*, 2014 IL 116998, ¶ 16. And the open and obvious rule extends to other less-common conditions, including sidewalk defects. *Id.* ¶ 17; see *Sandoval*, 357 Ill. App. 3d at 1029 (defective sidewalk in front of plaintiff's home). The risk of harm derived from an open and obvious condition is considered slight because the nature of the condition gives caution; people are expected to avoid open and obvious risks. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448 (1996).

¶ 46        A condition that is open and obvious does not automatically exclude a finding of a legal duty on the part of a defendant. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425 (1998) ("In assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case."). An open and obvious condition affects the foreseeability of injury and the likelihood of injury, the first two factors of the duty analysis. *Bucheleres*, 171 Ill. 2d at 456. Where the condition is open and obvious, there exists a slight foreseeability of harm, and therefore, the likelihood of injury weighs against imposing a duty. *Id.* at 456-57.

¶ 47        Burns and the City do not dispute that on August 15, 2012, it was raining, there was "medium light" outside, and that Burns was not distracted when he crossed the intersection. Burns crossed the intersection at least once a week and never noticed the defect until he fell.

¶ 48        Burns relies on *Trojan v. City of Blue Island*, 10 Ill. App. 2d 47 (1956). But there, the trial court never assessed the sidewalk defect under the open and obvious standard. Rather, the court determined whether defendant had constructive notice of a sidewalk defect. *Id.* at 48. We have already determined the City did not have constructive notice, so Burns' reliance on *Trojan* is misplaced.

¶ 49        Burns also relies on *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14 (2010), for the proposition that a reasonable jury could find that an issue of fact exists as to whether the raised tiles were open and obvious. In *Alqadhi*, plaintiff slipped and fell over a three-fourths of an inch rise in concrete of a handicap-accessible ramp in a privately owned parking garage. *Id.* at 15. The court found as a matter of law that the raised concrete was open and obvious and awarded summary judgment to defendant. *Id.* at 18. This court reversed and remanded, holding that the conflicting testimony between plaintiff's expert and defendant regarding visibility and other factors created a dispute about the physical nature of the condition, and therefore, a genuine issue of fact existed. *Id.* at 18-19.

¶ 50        We find Burns' injury distinguishable from that of the plaintiff in *Alqadhi*. First, plaintiff in *Alqadhi* fell in a private garage; Burns fell on a public sidewalk. See 345 ILCS 10/3-102(a) (West 2012). And unlike in *Alqadhi*, there is no conflicting evidence regarding the incident.

¶ 51        Also, the handicap ramp in *Alqadhi* did not contrast well with the rest of the pavement in the garage and created an " 'illusion' of walking on a flat surface." *Alqadhi*, 405 Ill. App. 3d at 18. The tiles over which Burns tripped had been specifically designed to provide a sensory cue to visually impaired individuals of where a sidewalk ends and a roadway begins. A reasonable person, in the same position as Burns, exercising ordinary perception, intelligence, and judgment, would recognize the tiles and ramp incline as he or she approached it. *Bruns*, 2014 IL 116998, ¶ 16. The tiles, by design, are open and obvious to reasonable people as well as visually impaired people because of their different color and consistency to the surrounding sidewalk.

¶ 52        We find the ADA sensory tiles were open and obvious, and therefore, the trial court properly entered summary judgment in favor of the City.

¶ 53        Affirmed.