**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220105-U

Order filed April 20, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| RAMONA L. ORY, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0105 |
| | ) | Circuit No. 18-L-486 |
| CITY OF NAPERVILLE, an Illinois municipal | ) | |
| body, | ) | The Honorable |
| | ) | Bryan S. Chapman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Albrecht and McDade concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   Trial court properly granted summary judgment to city sued by pedestrian under theories of negligence and premises liability for fall on city sidewalk where pedestrian failed to establish city had actual or constructive knowledge of defect in sidewalk.

¶ 2      Plaintiff Ramona Ory fell while walking on a pedestrian bridge in defendant City of Naperville (City). Thereafter, plaintiff filed a two-count complaint against the City, asserting causes of action for negligence and premises liability. The City filed a motion for summary

judgment, which the trial court granted. Plaintiff appeals the trial court's order granting summary judgment to the City. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On July 8, 2017, at approximately 11:40 p.m., plaintiff fell and was injured as she walked over the Main Street pedestrian bridge in the City's downtown area. On May 1, 2018, plaintiff filed a two-count complaint, alleging negligence and premises liability against the City. Plaintiff alleged that her fall was caused by a "sidewalk defect," consisting of "abrupt changes in height" in excess of 1 1/2 inches in the area of the sidewalk where she fell. She alleged the "sidewalk defect" had existed "for a long time prior to the incident." She further alleged the City failed to (1) warn pedestrians of the defect, (2) provide adequate lighting to illuminate the defect, and (3) repair the defect.

¶ 5        The City filed a motion to dismiss, arguing that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016)) precluded plaintiff's action. The circuit court denied the motion. Thereafter, the parties took depositions of several individuals, including plaintiff and employees of the City. Based on those depositions, the following facts were established.

¶ 6        On July 8, 2017, plaintiff was 62 years old. That evening, between 6:00 and 6:30 p.m., plaintiff met two friends for dinner at a restaurant in the City's downtown area. After dinner, plaintiff and her friends walked around downtown. Plaintiff fell while walking on the Main Street bridge in an area where a concrete expansion joint met adjacent concrete brick pavers. At the time of plaintiff's fall, the brick pavers had sunk or settled, causing a decrease in the height of the walking surface. Plaintiff did not see the height discrepancy between the brick pavers and adjacent concrete before she fell, but she and her friends noticed it after plaintiff's fall. When plaintiff fell,

she and her friends were the only individuals on the bridge. Plaintiff agreed there were at least five streetlights near the area of her fall, including one directly above where she fell. However, plaintiff described the lights as "not bright" and said she did not know if all the streetlights were on at the time of her fall. Plaintiff believed "a lack of lighting in the area" contributed to her fall. Plaintiff had no knowledge of anyone else falling in the location where she fell.

¶ 7        Keith Kania, a private investigator hired by plaintiff, measured the deviations between the concrete and brick pavers where plaintiff fell and found them to be between 7/8 inch to 1 1/2 inches in height. Kania had no knowledge that the City was aware of the deviations or that other people had fallen at the location where plaintiff fell. Kania testified that there were three streetlights on the side of the bridge where plaintiff fell: one at the south end of the bridge, one in the middle of the bridge, and one at the north end of the bridge. Kania testified a streetlight is located directly above where plaintiff's fall occurred.

¶ 8        Deputy City Engineer/Engineering Manager Andrew Hines testified that the Main Street bridge is owned and maintained by the City. Hines stated the entire bridge, including the sidewalks located on it, was reconstructed in 2005. Hines was the project engineer for the Main Street bridge reconstruction project. Hines did not inspect any part of the bridge after the 2005 reconstruction was complete.

¶ 9        According to Hines, the City has a sidewalk replacement program, and that program was in place at the time of plaintiff's fall. The program requires sidewalks to be inspected when (1) the road adjacent to a sidewalk is resurfaced, or (2) the City receives a complaint about a sidewalk. Pursuant to the program's guidelines, the City repairs or replaces a sidewalk when an inspection reveals a one-inch or more differential between sidewalk sections. According to Hines, Main Street

3

has not been resurfaced since 2005, and the City "received no complaints about the sidewalk in question other than the plaintiff's lawsuit."

¶ 10 Marco Marino, a road construction and sidewalk inspector for the City, testified he was directed by the City to inspect the sidewalk on the Main Street bridge as a result of plaintiff's fall. Marino inspected the sidewalk on the bridge on May 25, 2018, and found the height difference between the pavers and concrete met the criteria for replacement, meaning there was "a height difference of one inch or more." Marino did not record the height difference because he found "no reason" to do so. If the height difference meets the City's criteria for replacement, Marino "mark[s] it out to be repaired" and identifies "the areas of what needs to be fixed." According to Marino, the City replaced all the sidewalks on Main Street bridge on September 18, 2018.

¶ 11 Marino also knew about the City's sidewalk replacement program. He testified that in order for a section of sidewalk to qualify for the program, one of the following conditions must exist: (1) "[s]idewalk must be sunken or risen to a height difference of one inch or more between sections," (2) "sidewalk must be broken or separated into three or more pieces," or (3) "50 percent or more of the sidewalk surface must be deteriorated." Marino did not know when the deviation between the sidewalk concrete and pavers where plaintiff fell first appeared. Marino did not inspect the bridge before May 25, 2018.

¶ 12 Robert Kozurek testified that he worked as the deputy engineer for the City from the late 1990s until his retirement in 2017. As the City's deputy engineer, Kozurek inspected City bridges, roadways and sidewalks. According to Kozurek, City bridges were inspected every four years. Kozurek testified that he inspected the Main Street bridge on September 9, 2015. He did not have an independent recollection of the details of his September 9, 2015, inspection, but he completed a memorandum about his inspection the following day. Based on his memorandum, Kozurek

4

determined the sidewalks on and adjacent to the bridge were "okay." He noted no defects, sinking or settling. Kozurek said he would have noted a sidewalk defect and reported it if it met the criteria for replacement. Kozurek was familiar with the City's sidewalk replacement program and testified about the criteria for replacement of sidewalks, including a one-inch or more height differential between sidewalk sections. Based on his notes, Kozurek testified that no sidewalks adjacent to the bridge on September 9, 2015, had sunken or risen to a height difference of more than one inch. Kozurek did not know when the pavers began to sink or settle on the Main Street bridge and agreed that settling could be caused by the "freeze/thaw cycle."

¶ 13 During Kozurek's deposition, plaintiff's counsel attempted to question Kozurek about Google Earth photos of the area in question purportedly taken in 2012 and thereafter. Defense counsel objected. Over that objection, Kozurek agreed that the area of the sidewalk where plaintiff fell appeared to be "not flush" in 2012. He believed there was a "small amount of difference" between the concrete and pavers at that time but could not estimate what that difference was. He agreed that Google Earth photos from 2013 also showed the area of the sidewalk was "not flush" but could not tell from the photos how much the pavers had sunk at that time. When Kozurek was shown a Google Earth photo time stamped in October 2016, with a "Sidewalk Closed" sign on the roadway of the bridge adjacent to the sidewalk, Kozurek said he did not know why the sign was there. He speculated: "There must have been construction in the area or something." Kozurek agreed the 2016 Google Earth photo showed the sidewalk was "not flush" in the area where plaintiff fell.

¶ 14 After all relevant witnesses were deposed, the City filed a motion for summary judgment, arguing that it was immune from liability because (1) it had no notice of the alleged sidewalk defect, (2) the alleged defect was *de minimis*, and (3) it maintained a sidewalk inspection and

5

replacement program. In response to the City's motion, plaintiff asserted that "[u]ndisputed photographic evidence from Google Earth demonstrates that the sunken pavers existed since at least August 2012." In its reply, defendant argued that the Google Earth photos could not be used for the purposes offered by plaintiff.

¶ 15        A hearing on defendant's motion for summary judgment was held on February 16, 2022. At the hearing, plaintiff argued that defendant had constructive notice of the defect in the sidewalk since August 2012 based on the Google Earth photos. The City responded that the Google Earth photos were not admissible because plaintiff failed to lay a proper foundation for them and that, even if the photos were admissible, they did not show the height of the deviation of the sidewalk. Following the hearing, the trial court entered an order granting summary judgment to the City.

¶ 16                                    II. ANALYSIS

¶ 17                        A. Summary Judgment Standards and Evidence

¶ 18        The purpose of summary judgment is to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.,* 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 43; 735 ILCS 5/2–1005(c) (West 2016). In determining whether a genuine issue of material fact exists, the court must construe the evidence "strictly against the movant and liberally in favor of the opponent." *Adams,* 211 Ill. 2d at 43.

¶ 19        Summary judgment should be used "as an aid in the expeditious disposition of a lawsuit." *Id*. However, it is "a drastic means of disposing of litigation," so it should be granted only when the right of the movant is clear and free from doubt. *Id.* Review of a circuit court's grant of

summary judgment is *de novo. Id.* We may affirm the circuit court's order granting summary judgment on any basis appearing in the record. See *Monson v. City of Danville*, 2018 IL 122486, ¶ 41.

¶ 20     "Evidence that would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment." *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009). "In civil cases in Illinois, the basic rules of evidence require a proponent of documentary evidence to lay a foundation for the introduction of that document into evidence." *Anderson v. Human Rights Comm'n,* 314 Ill. App. 3d 35, 42 (2000). "Evidence must be presented to demonstrate that the document is what its proponent claims it to be." *Id*. "Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence." *Id*.

¶ 21     A party may authenticate evidence about a process or system by "describing a process or system used to produce a result and showing that the process or system produces an accurate result." Ill. R. Evid. 901(b)(9) (eff. Sept. 17, 2019). This is how data produced by a computer program like Google Earth is typically authenticated. *See United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015); *United States v. Espinal-Almeida*, 699 F.3d 588, 610-13 (1st Cir. 2012); *Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 738-39 (Tex. App. 2018).

¶ 22     It is appropriate for a court to take judicial notice of photographs from Google for limited purposes, such as establishing geographical facts or determining the distance from one location to another. See, e.g. *People v. Davila*, 2022 IL App (1st) 190882, ¶ 29 (establishing distance between various locations); *Wisnasky v. CSX Transportation, Inc.*, 2020 IL App (5th) 170418, ¶ 6 ("assisting the reader in understanding the layout" of a certain intersection); *Shaw v. Haas*, 2019

IL App (5th) 180588, ¶ 24 (establishing distance between various locations); *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶¶ 49-50 (establishing existence of pedestrian sidewalks); *People v. Clark*, 406 Ill. App. 3d 622, 634 (2010) (establishing location of park "*only* for the purpose of *understanding* the statements made *at trial* by the witnesses and by the trial court"); *People v. Stiff*, 391 Ill. App. 3d 494, 504-05 (2009) (establishing distance between two residences). However, dated Google Earth photos are not admissible absent proper authentication. See *Rivera v. City of New York*, 181 A.D. 3d 479, 480 (Sup. Ct. App. N.Y. 2020); *City of Miami v. Kho*, 290 So. 3d 942, 945 (Ct. App. Fla. 2019); *Jones*, 558 S.W.3d at 738. The proponent of dated Google Earth photos must provide evidence describing how the photos are dated and show that the dates on the photos sought to be admitted are accurate. See *Jones*, 558 S.W.3d at 738.

¶ 23                                 B. Tort Immunity

¶ 24        The tort liability of a municipality is governed by the Tort Immunity Act. *West v. Kirkham,* 147 Ill. 2d 1, 5 (1992). The purpose of the Tort Immunity Act is to protect local governments and their employees from liability arising out of the operation of government. *Vesey v. Chicago Housing Authority,* 145 Ill. 2d 404, 412 (1991). The Tort Immunity Act "grants only immunities and defenses." 745 ILCS 10/1-101.1(a) (West 2016).

¶ 25        Section 3-102(a) of Tort Immunity Act provides that a local public entity is not liable for injury unless "it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2016). The burden of proving notice is on the plaintiff. *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 14. The question of notice is generally one of fact but becomes a question of law if all the

8

evidence when viewed in the light most favorable to the plaintiff so overwhelmingly favors the defendant public entity that no contrary verdict could ever stand. *Id.*

¶ 26    Section 3-102(a) of the Tort Immunity Act requires proof that the defendant had timely notice of the specific defect that caused the plaintiff's injuries, not merely the condition of the area. *Zameer*, 2013 IL App (1st) 120198, ¶ 16. To survive summary judgment, the plaintiff needs to provide evidence sufficient to support a jury finding that the city had either actual or constructive notice of the defect that caused her fall in adequate time to have taken measures to repair the sidewalk. See *id*.

¶ 27    Under the Tort Immunity Act, "actual notice means notice of the condition only, not the unsafe nature of the condition." *Glass v. City of Chicago*, 323 Ill. App. 3d 158, 163 (2001) (citing *Vacala v. Village of La Grange Park*, 260 Ill. App. 3d 599, 614 (1994)). A municipality's actual notice of a condition can be established by (1) a municipal employee's actual knowledge of the defect in question (see *id*.); or (2) a prior report of the defect to the municipality (see *Zameer*, 2013 IL App (1st) 120198, ¶¶ 17-18). Where there is no evidence that anyone informed the municipality of the defect before the plaintiff's injury, a trial court does not err in finding the municipality lacked actual notice of the defect. See *id.* ¶ 18.

¶ 28    Constructive notice under section 3-102(a) of the Tort Immunity Act "is established where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known of it." *Finley v. Mercer County*, 172 Ill. App. 3d 30, 33 (1988). Where the plaintiff presents no evidence regarding how long a dangerous defect existed before her injury, she fails to meet her burden of showing that the defendant had constructive notice of the defect. See *Burns v. City of Chicago*, 2016 IL App (1st) 151925, ¶¶ 38-39; *Zameer*, 2013 IL App (1st) 120198, ¶ 24. In such a case, it is proper for the trial court to grant

9

summary judgment to the defendant. See *Burns*, 2016 IL App (1st) 151925, ¶ 39; *Zameer*, 2013 IL App (1st) 120198, ¶ 24.

¶ 29 Further, section 3-102(b) of the Tort Immunity Act provides that a public entity does not have constructive notice of a dangerous condition if it establishes either:

> "(1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate ***; or
>
> (2) The public entity maintained and operated such an inspection system with due care and did not discover the condition." 745 ILCS 10/3-102(b) (West 2016).

"[T]he burden of establishing the reasonableness of an inspection system under section 3-102(b) rests with the public entity." *Buford by Buford v. Chicago Housing Authority*, 131 Ill. App. 3d 235, 248 (1985).

¶ 30 "[A]lthough section 3-102(b) describes circumstances by which the defendant may prove its lack of constructive notice, it does not relieve the plaintiff of the initial burden, codified in section 3-102(a), of proving the defendant's actual or constructive notice." *Krivokuca v. City of Chicago*, 2017 IL App (1st) 152397, ¶ 60. Where the plaintiff fails to offer proof of actual or constructive notice, section 3-102(a) shields a municipality from liability regardless of whether the municipality proved the existence of a reasonably adequate inspection system pursuant to section 3-102(b). *Id.*

¶ 31                                           D. *De Minimus* Rule

¶ 32 Illinois courts follow a *de minimis* rule in assessing injury claims resulting from elevation deviations in adjoining municipal sidewalk slabs. *Burns*, 2016 IL App (1st) 151925, ¶ 20 (citing *Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1023 (1997)). Reasoning that a municipality is

not required to keep its sidewalks in perfect condition at all times, courts hold that slight defects are *de minimis* and not actionable as a matter of law. *Bledsoe*, 288 Ill. App. 3d at 1023. A sidewalk defect is considered *de minimis* "if a reasonably prudent person would not foresee some danger to persons walking on it." *Burns*, 2016 IL App (1st) 151925, ¶ 21 (citing *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 605 (1957)).

¶ 33        "There is no mathematical formula or bright-line test for determining whether a sidewalk defect is *de minimis*." *Monson v. City of Danville*, 2018 IL 122486, ¶ 43. The question turns on the facts of each case. *Id*. (citing *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978)). Factors relevant to this analysis include the difference in height between adjoining sidewalk slabs, the anticipated volume of traffic on the sidewalk, and whether the sidewalk is located in a commercial or residential area. *Id.* (citing *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993)). Injuries on sidewalks located in well-traversed or busy commercial areas are more likely to result in liability than those in residential areas. *Id*. (citing *Warner*, 72 Ill. 2d at 104).

¶ 34        "Usually, a defect approaching a height difference of two inches is not *de minimis*." *Burns*, 2016 IL App (1st) 151925, ¶ 21 (citing *Birck,* 241 Ill. App. 3d at 122). The plaintiff has the burden to prove that the defect was not *de minimis* and may do so by presenting evidence of the size of the defect and aggravating circumstances. *Id*; (citing *Gillock v. City of Springfield,* 268 Ill. App. 3d 455, 458 (1994)). Aggravating circumstances include poor lighting conditions in the area where the plaintiff fell. See *Cook v. Village of Oak Park*, 2019 IL App (1st) 190010, ¶ 16 (citing *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, ¶ 35; *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 19 (2010)).

¶ 35                                  E. Summary Judgment in this Case

¶ 36    Here, plaintiff contends the circuit court erred in granting summary judgment to the City because (1) the City had actual and/or constructive notice of the alleged defect in the sidewalk, and (2) the defect was not *de minimis*. Plaintiff asserts defendant had actual notice based on the presence of the "Sidewalk Closed" sign on the street next to the sidewalk, as shown in the Google Earth photo from October 2016. She further asserts that defendant had constructive notice based on the Google Earth photos which show a visible gap between the concrete and brick pavers beginning in 2012. We disagree.

¶ 37    First, the Google Earth photos were inadmissible because plaintiff provided them to the court with no foundation nor authentication. See *Anderson,* 314 Ill. App.3d at 42; *Jones*, 558 S.W.3d at 738; *City of Miami*, 290 So. 3d at 945; *Rivera*, 181 A.D. 3d 479. To establish the Google Earth photos were actually taken on the dates stamped on them, plaintiff had to present evidence describing how the photos are dated and that the dates on the photos are accurate. See Ill. R. Evid. 901(b) (eff. Sept. 17, 2019); *Jones*, 558 S.W.3d at 738. Because the photos were not properly authenticated, the trial court could not consider them when ruling on defendant's motion for summary judgment. See *Complete Conference Coordinators*, 394 Ill. App. 3d at 108.

¶ 38    Second, even if we were to consider the photos as evidence, they do not establish that defendant had actual knowledge of a dangerous defect in the condition of the sidewalk. The Google Earth photo of the "Sidewalk Closed" sign does not establish actual notice by defendant because there is no evidence that (1) the City placed the sign there, or (2) the sign was placed where it was, which was in the street next to the sidewalk in question not in front of the sidewalk in question, because of a defect in the sidewalk. Absent evidence that the City placed the sign in front of the sidewalk where plaintiff was injured because it was aware that the sidewalk constituted a dangerous condition and did not repair it, plaintiff failed to establish actual notice by defendant.

12

Plaintiff also failed to establish the City had actual notice of the dangerous condition of the sidewalk because there was no evidence presented that anyone ever complained about the condition of the sidewalk before plaintiff's fall. See *Zameer*, 2013 IL App (1st) 120198, ¶ 18.

¶ 39　　　　Furthermore, plaintiff failed to establish the City had constructive notice because she presented no admissible evidence about how long the allegedly dangerous condition of the sidewalk existed. See *id*. ¶ 24; *Burns*, 2016 IL App (1st) 151925, ¶ 38. Again, even if we were to consider the inadmissible Google Earth photos that show a small gap in the sidewalk beginning in 2012, plaintiff presented no evidence establishing how large the gap was at any given time or when the gap exceeded one inch, making it subject to repair or replacement under the City's replacement program. The City, on the other hand, presented evidence that less than two years prior to plaintiff's fall, the gap in the sidewalk was less than one inch, based on Kozurek's deposition testimony. Because plaintiff failed to establish that the sidewalk was in a dangerously defective condition for so long that the City should have been aware of it, the trial court properly granted summary judgment to the City. See *Burns*, 2016 IL App (1st) 151925, ¶ 39; *Zameer*, 2013 IL App (1st) 120198, ¶ 24.

¶ 40　　　　Having concluded that the City lacked actual or constructive notice of the defect in the sidewalk where plaintiff fell, we need not determine if (1) the City proved it had a reasonably adequate inspection system (see *Krivokuca*, 2017 IL App (1st) 152397, ¶ 60), or (2) the defect was *de minimis* (see *Zameer*, 2013 IL App (1st) 120198, ¶ 26). We affirm the trial court's grant of summary judgment to the City.

¶ 41　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 43　　　　Affirmed.

13