2025 IL App (1st) 241716-U

FIRST DISTRICT,
SIXTH DIVISION
February 28, 2025

No. 1-24-1716

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ANGEL PATTERSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 22 L 008798 |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) | Honorable |
| | ) | Maureen O. Hannon, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In premises liability suit against municipality, summary judgment for municipality was proper where plaintiff presented no evidence that the municipality had actual or constructive notice of the allegedly dangerous condition that caused her injury pursuant to section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act.

¶ 2    Plaintiff Angel Patterson was injured by a falling piece of wall cladding at Chicago O'Hare International Airport (O'Hare). She filed a premises liability suit against the City of Chicago (City). The City moved for summary judgment based on Patterson's failure to show that the City had notice of the unsafe condition as required by section 3-102(a) of the Local

Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-102(a) (West 2020)). The trial court granted the City's motion and entered summary judgment. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On November 26, 2021, Patterson was at O'Hare to take a flight to Kansas. She took an elevator on the way to her gate. As she exited the elevator, a large, heavy, vertical piece of wall cladding that framed the elevator spontaneously detached from the wall and fell on her right shoulder. Patterson sustained a torn rotator cuff and other "serious and debilitating injuries."

¶ 5         On September 28, 2022, Patterson brought a premises liability suit against the City. In her second amended complaint, she alleged that the City owned, operated, and managed O'Hare and had a duty to exercise ordinary care to ensure that O'Hare was reasonably safe for persons lawfully on the premises. She alleged the City breached that duty by failing to properly inspect and maintain the unsecured and unstable cladding that framed the elevator door. She additionally sought recovery under a theory of *res ipsa loquitur*, alleging her injury would not have occurred "if [the] City had exercised ordinary care while the aforesaid cladding was under its control and/or management."

¶ 6         The City moved for summary judgment, arguing that under section 3-102(a) of the Act (745 ILCS 10/3-102(a) (West 2020)), it could not be held liable for Patterson's injuries because it did not have actual or constructive notice of the allegedly dangerous condition of the wall cladding. The City alleged it conducted regular inspections of the area and did not discover any dangerous condition. It also argued, based on Patterson's deposition testimony, that the condition was not plainly visible or apparent.

¶ 7         In support, the City attached Patterson's deposition, in which she described the accident as follows: "I got off the elevator and something fell on me." She did not hear any noises

indicating that something might potentially fall on her, and she did not see anything alongside the elevator indicating that part of it was unstable. The City also attached an affidavit from John Antonacci, general manager of airport operations for the Chicago Department of Aviation (CDA) Facilities. Antonacci testified that in November 2021, City personnel conducted daily walkthroughs in the underground pedestrian corridor at O'Hare observing "the conditions of the underground corridor's lighting, floors, walls and ceilings for safety hazards, including the elevator center areas." If an employee conducting a walkthrough observed a portion of wall cladding in a condition where it might separate and fall, the employee would be expected to notify Antonacci, his "group," or CDA Facilities so the hazard could be immediately addressed. Prior to Patterson's accident, the City was not notified of a portion of wall cladding in a condition where it might separate and fall.

¶ 8        Patterson filed a response to the City's summary judgment motion in which she conceded she "can offer no direct evidence of actual or constructive notice." She nevertheless argued that "*res ipsa* inference is sufficient to withstand summary judgment." She further argued that issues of fact existed as to whether the City had a "reasonably adequate" inspection system under section 3-102(b)(1). As to Antonacci's affidavit, she argued it should be stricken because he had not been disclosed by the City as a Rule 213(f) witness.

¶ 9        On July 25, 2024, the trial court granted the City's summary judgment motion and entered judgment for the City, finding no evidence of notice pursuant to section 3-102(a). Patterson timely filed the instant appeal.

¶ 10                                   II. ANALYSIS

¶ 11       We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is only appropriate where

"there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Thus, we construe the record strictly against the movant and liberally in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. To prevail, the nonmoving party must present some evidence that would arguably entitle her to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 12    Section 3-102(a) of the Act codifies the common-law duty of a municipality to maintain its property in a reasonably safe condition so that people using ordinary care are not injured. *Alave v. City of Chicago*, 2023 IL 128602, ¶ 38. A municipality may not be held liable under this section "unless it is proven" that the municipality had "actual or constructive notice of the existence of *** a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2020). The plaintiff bears the burden of proving notice. See, *e.g.*, *Monson v. City of Danville*, 2018 IL 122486, ¶ 23; *Burns v. City of Chicago*, 2016 IL App (1st) 151925, ¶ 34.

¶ 13    As she did before the circuit court, Patterson concedes on appeal that "she has no direct evidence of actual or constructive notice to [the] City that [the] cladding was insecure and thus hazardous." She nevertheless argues that she is not required to present evidence of notice because she is proceeding on a theory of *res ipsa loquitur*. Alternatively, she argues that issues of fact exist as to whether the City had a reasonably adequate inspection system under section 3-102(b)(1).

¶ 14                                   A. *Res Ipsa Loquitur*

¶ 15    We begin by considering Patterson's argument that she need not present evidence of notice to prevail on a theory of *res ipsa loquitur*.

¶ 16     *Res ipsa loquitur* is "a rule of evidence relating to the sufficiency of plaintiff's proof to establish a defendant's negligence." (Internal quotation marks omitted.) *Krivokuca v. City of Chicago*, 2017 IL App (1st) 152397, ¶ 43. If a plaintiff establishes she was injured "(1) in an occurrence that ordinarily does not happen in the absence of negligence, [and] (2) by an agency or instrumentality within the defendant's exclusive control," the trier of fact may presume negligence, and the burden of proof shifts to the defendant to rebut this presumption. *Gatlin v. Ruder*, 137 Ill. 2d 284, 294-96 (1990). This doctrine "allow[s] proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." (Internal quotation marks omitted.) *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 816 (2003).

¶ 17     In *Krivokuca*, 2017 IL App (1st) 152397, ¶ 44, we held the assertion of negligence under a theory of *res ipsa loquitur* is "incompatible" with the notice requirement imposed by section 3-102(a). The plaintiff in *Krivokuca* was injured when a sinkhole suddenly opened under his truck. He sued the City, arguing *res ipsa loquitur* applied because "a sinkhole does not ordinarily open in a street in the absence of negligence." *Id.* ¶ 5. We affirmed the dismissal of his *res ipsa loquitur* claim, explaining that section 3-102(a) requires more than "circumstantial evidence" of the nature of a plaintiff's injury to prove a municipality's liability for negligence. *Id.* ¶ 44. Under the plain language of this section, plaintiff bears the burden of proving notice. This requirement is consistent with the purpose of the Act, which "is plainly to limit the circumstances under which a municipality may be held liable for negligence." *Id.* ¶ 46. Since section 3-102(a) "imposes an additional element of proof that is not contemplated by the common law *res ipsa loquitur* doctrine," plaintiff's claim was properly dismissed. *Id.*

¶ 18        We find no reason to depart from our well-reasoned decision in *Krivokuca*. "The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and effectuate the true intent and meaning of the legislature." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16. If the statutory language is plain, clear, and unambiguous, and the intent of the legislature can be determined therefrom, it "must prevail and will be given effect by the courts." *Id. Krivokuca* gives effect to the plain language of section 3-102(a), which expressly precludes liability "unless it is proven" that the defendant had actual or constructive notice. 745 ILCS 10/3-102(a) (West 2020). We reaffirm this interpretation.

¶ 19        Patterson argues that allowing her to proceed under a theory of *res ipsa loquitur* "would not relieve [her] of the burden of proving notice" under the Act. This argument is spurious. Patterson openly concedes that she has no evidence that the City had actual or constructive notice of the condition that caused her injury. By her own admission, she cannot meet her burden under the statute. Rather, she seeks to rely on the *res ipsa loquitur* inference of negligence, which would shift the burden to the City to show that it was *not* negligent. *Gatlin*, 137 Ill. 2d at 294. This burden-shifting inference is incompatible with the plain language of the statute, which "clearly refers to the *plaintiff*'s burden" to prove actual or constructive notice. (Emphasis in original.) *Monson*, 2018 IL 122486, ¶ 23.

¶ 20        Patterson further argues that *Krivokuca* overlooks the principle that the Act is in derogation of the common law and must be strictly construed against the public entities invoking it. *Davis v. Chicago Housing Authority*, 176 Ill. App. 3d 976, 979 (1988). However, no amount of strict construction can override the plain language of the statute, which requires a plaintiff to prove actual or constructive notice. In the absence of any such evidence, Patterson's claim is precluded by the Act.

¶ 21                             B. Reasonably Adequate Inspection System

¶ 22        Patterson next contends that summary judgment for the City is improper because issues of fact exist as to whether the City had a reasonably adequate inspection system under section 3-102(b)(1) of the Act (745 ILCS 10/3-102(b)(1) (West 2020)). Under section 3-102(b)(1), a municipality does not have "constructive notice" of the existence of a condition that is not reasonably safe if it maintains a "reasonably adequate" inspection system. *Id.* The adequacy of such a system is assessed by weighing "the practicability and cost of inspection" against "the likelihood and magnitude of the potential danger" if no inspection is conducted. *Id.*

¶ 23        Section 3-102(b)(1) provides a municipal defendant with a way to prove lack of constructive notice, but it does not relieve the plaintiff of her initial burden under section 3-102(a) to show the defendant's actual or constructive notice. *Ory v. City of Naperville*, 2023 IL App (3d) 220105, ¶ 29. "Where the plaintiff fails to offer proof of actual or constructive notice, section 3-102(a) shields a municipality from liability regardless of whether the municipality proved the existence of a reasonably adequate inspection system pursuant to section 3-102(b)." *Id.* Considering Patterson's failure to offer any proof of notice, there is no genuine issue of material fact to preclude summary judgment in favor of the City.

¶ 24        Due to our resolution of this issue, we need not consider Patterson's contention that the court should have stricken Antonacci's affidavit based on the City's failure to disclose him as a Rule 213(f) witness. With or without the affidavit, there is nothing in the record that could be used to prove the City had notice. As such, the court did not err in granting summary judgment.

¶ 25                                      III. CONCLUSION

¶ 26        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 27        Affirmed.